*Kilty,* for the plaintiff.

*Ridgely,* for the defendant.

———⁂———

## GENERAL COURT, OCTOBER TERM, 1799.

### PETER's Lessee *vs.* MAINS.

EJECTMENT for a tract of land called *The Resurvey on Pipe Tomahock,* lying in Washington county.

The defendant took defence upon the plots returned in the cause, for two tracts of land, one called *The Grove,* and the other called *Hazard,* both of which tracts were included within the plaintiff's location of *The Resurvey on Pipe Tomahock.*

The plaintiff, at the trial of the cause, produced and offered in evidence to the jury, the *warrant of resurvey* which issued on *Pipe Tomahock* to *Samuel Postlewait,* on the 19th of January 1765; the first, second, and third renewals of the said warrant on the 16th of July 1765, the 10th of January 1766, and the 11th of July 1766; the certificate of resurvey, made under the second renewal, dated the 18th of June 1766, and that it was returned to the land office on the 29th of September 1767, examined and passed on the 14th of August 1775, the composition money paid thereon on the 30th of August 1775, assigned to *Robert Peter,* the lessor of the plaintiff, and the patent thereon issued to the said *Peter* on the 1st of September 1775, for the said land so resurveyed, called *The Resurvey on Pipe Tomahock,* and which is the land located by the plaintiff on the plots returned in the cause.

The defendant, to support his title to the tract of land called *The Grove,* as located by him on the said plots, produced and offered in evidence to the jury, a *special warrant,* issued to him the defendant on the 4th of June 1765, and upon which he had paid the composition money; also the first, second, and third renewals of the said warrant, on the 30th of November 1765, the 28th of May 1766, and the 3d of December 1766; also the certificate of survey for the land called *The Grove,* dated the 19th of May 1767; and that it was examined and passed on the 28th of May 1767; the improvements and rents to

*(a) Duvall,* J. concurring.

Michaelmas 1770 paid; that the certificate was caveated by *Robert Peter* on the 14th of December 1767; which was overruled by the judge of the land office, the caveator not appearing, &c. and also the patent thereon issued to him the defendant on the 27th of October 1770.

The defendant also, to support his title to the tract of land called *Hazard*, as located by him on the said plots, produced and offered in evidence to the jury, a *common warrant* granted to *William M. Beall*, on the 3d of March 1767, upon which he had paid the composition money; also the certificate of survey made out upon the said warrant for the land called *Hazard*, dated the 10th of March 1767, and that it was returned to the land office on the 11th of August 1767, examined and disallowed on the 5th of October 1767, was amended and returned, and examined and passed on the 27th of November 1767; and also the patent granted upon the said certificate on the 16th of February 1768.

The defendant then prayed the opinion of the court, and their direction to the jury, that the plaintiff in this cause had made no title to the land called *The Grove*, and the land called *Hazard*, under his patent for the tract of land called *The Resurvey on Pipe Tomahock*.

*Mason*, for the defendant, contended, that the patents for the tracts of land called *The Grove* and *Hazard*, claimed a pre-eminence over the tract called *The Resurvey on Pipe Tomahock*; that the patent for *The Grove* was the eldest by almost five years; and that *The Resurvey on Pipe Tomahock* was not entitled to priority by relation; for that according to the practice and rules of the land office, all resurveys were to be compounded on within two years from the date of the warrant. That on the 19th of January 1767, the time expired within which the certificate of survey, under which the plaintiff claims, ought to have been compounded on, and thereby the resurvey was then lost and had no existence. That the title of the defendant to the land called *The Grove* was complete in October 1770; and as to the title to the land called *Hazard*, it was not to be questioned, the warrant having been taken out after *The Resurvey on Pipe Tomahock* ceased to have any operation. He cited the case of *Hath's lessee vs. Polk*, at April term 1770, *(a)* where *Hath* obtained an escheat warrant on the 7th of August 1745, returned a certificate of survey dated 19th September 1745, paid the composition money on the 18th of February 1763, and obtained a patent on the 29th of September 1763. *Polk* obtained an escheat warrant on the 19th of March

*(a)* 1 Harris & M'Henry's Reports, 363.

1749, returned a certificate of survey dated the 5th of September 1750, and obtained a patent thereon on the 19th of August 1752. The provincial court gave judgment in favour of the defendant. The principle established by the provincial court in the case of *Hath* and *Polk*, is that relation to the first certificate, of survey cannot take place unless the rules of the land office have been complied with.

*Key*, for the plaintiff, argued, that according to the rules of the land office, in force at the time when these transactions took place, the plaintiff is entitled to the relation of his patent to the certificate of survey upon which it issued. The warrant under which he claims, is elder than either of those under which the defendant claims. The plaintiff's survey was first executed; but the defendant obtained the first patents. It is the case of an elder survey and junior grant, claiming priority of a junior survey and elder grant. One of the rules of the land office was, that a warrant not executed should be renewed within six months, or there could be relation only to the last renewal. Here the warrant, under which the plaintiff claims, was regularly renewed, and the survey was made within two years from the date of the first warrant. The last renewal of the defendant's warrant, under which *The Grove* was surveyed, was on the 3d of December 1766, and not within six months from the date of the preceding warrant, which was on the 28th of May 1766, consequently the patent for that tract can only have relation to the 3d of December 1766, which was upwards of five months after the plaintiff's survey was made. Another of the rules of the land office was, that when a survey was made, the land surveyed, on nonpayment of the composition money, could be effected only by a proclamation warrant. It was not necessary that a certificate of survey should be returned to the land office to justify the issuing a proclamation warrant thereon; but after the expiration of the two years from the date of the original warrant, a proclamation warrant might issue, and the courses of the original survey could be obtained from the surveyor, where the defendant, if he had resorted, might have had notice of the plaintiff's survey. The common mode of taking up land was then, as it is now, by a common or special warrant, the former to affect vacant uncultivated land, and the latter, vacant cultivated land. The proclamation warrant issued where the rules of the office had not been complied with after a survey had been made, and was the only warrant which could affect the land after it had been surveyed under either of the first mentioned warrants. The office would not grant a

patent, but on a survey made under a proclamation war-
rant, if a survey was known to have been made under an
incipient certificate and not fulfilled. Another rule of the
land office was, that if the survey was made within two
years from the date of the warrant, although the certificate
was not returned to the office within that time, yet a patent
might issue, on the composition money being paid, if the
land had not been previously granted according to the
rules of office. The grant for *The Grove* was an impo-
sition and fraud upon the Proprietary, in not having been
obtained in conformity to the rules of his office. The ti-
tle to *The Resurvey on Pipe Tomahock*, it is contended,
is conformable to those rules. The defendant's warrant,
under which *Hazard* was surveyed, was a common war-
rant issued on the third of March 1767; it could not af-
fect the land included in the plaintiff's survey made on
18th of June 1766; a proclamation warrant was the on-
ly mode by which it could be affected; nor was the sur-
vey of *Hazard* made until the 10th of March 1767, or
the certificate returned until the 27th of November 1767;
whereas the plaintiff's land was surveyed on the 18th of
June 1766, and the certificate returned on the 29th of
September 1767. The Proprietary was bound by his
contract with the claimant of *The Resurvey on Pipe To-
mahock*, and the defendant, under a common warrant,
was shut out. If the Proprietary had not granted the
land to the lessor of the plaintiff, the state might do so
now, as the certificate under which he claims was the
first in the office, and the defendant was bound to take
notice of it. He was a second purchaser with notice,
there is therefore no equity in his case. He violated the
rules of the office in obtaining his patent upon a survey
made under a common warrant. Where then is his equity?

*Martin*, (Attorney General,) on the same side. As to
the case of *Hath* and *Polk*, it was decided on this princi-
ple: The escheat grant obtained by *Hath* recited that the
warrant issued for want of the heirs of *James Johnson*,
to whom it stated the land had been granted, and there
was no grant to *James Johnson* produced. The grant
was to *John Johnson*; and the escheat grant obtained by
*Polk* recited the original grant to *John Johnson*, and that
the land became escheat for want of heirs of *John John-
son*. The court therefore decided that *Hath*, the plain-
tiff, should not recover.

*Shaaff*, in reply. The Lord Proprietary contracted
with and received payment from the defendant, when he
was at liberty to do so. His prior contract with those
under whom the plaintiff claims, was void when he

granted the land to the defendant, because the certificate of survey had not been returned to the office, nor the composition money paid within two years from the date of the first warrant, according to the rules of the land office; and if the composition money was not paid within two years the Proprietary might rightfully grant the land to another. He might grant the land on a proclamation warrant, or he might wave his own rules, and grant in any way he thought proper. It was not material to him how the land was acquired, provided he received full payment. As the plaintiff was not entitled to a grant for the land, one for the same land could be made to any other person. The warrant under which the plaintiff claims, was taken out on the 19th of January 1765; his certificate of survey was returned on the 29th of September 1767, and the composition money paid on the 30th of August 1775. The defendant's special warrant, under which *The Grove* was surveyed, issued on the 4th of June 1765, at which time the caution money was paid. The warrant was renewed from time to time, and the survey was made on the 19th of May 1767, under the renewed warrant of the 3d of December 1766, after the plaintiff's survey ceased to have any operation or effect, and when the defendant was at liberty to locate his warrant on the land which the plaintiff's survey had included, the certificate not having been returned. So also as to the common warrant under which *Hazard* was surveyed—that warrant issued on the 3d of March 1767, and the caution money then paid, the defendant had a right to locate it on the land included in the plaintiff's survey, for the reasons already mentioned.

The gentleman is mistaken as to the rules of the land office—no proclamation warrant could issue until the certificate of survey, which it was intended to proclamate, was returned to the office. The composition money on the plaintiff's survey was not paid until the 30th of August 1775, ten years and six months after the date of his warrant; whereas the composition money on *The Grove* was paid on the 4th of June 1765, and that on *Hazard* was paid on the 3d of May 1767.

The case of *Kelly* and *Sothoron, (a)* settles the principle, that land liable to escheat may be granted under a common warrant. The principle contended for on the part of the defendant, was established under the old government; and the relation of the grant to the certificate has been uniformly admitted if there has been no intervening principles of equity to prevent it. It is founded in a fiction of law, and is never supported but in furtherance of justice—2 *Shep. Ab.* 149.

(a) 2 Harr. and M'Hen. 121.

It is only necessary for the defendant to shew his grants, to prevent the relation of the plaintiff's grant to his certificate. On a warrant of resurvey, which his was, the certificate must be returned, and the composition money paid within two years from the date of the warrant; and as that was not the case, the contract with the Proprietary was at an end. The last renewment of his warrant was on the 10th of January 1766; the survey was made on the 18th of June 1766; and fifteen months thereafter, being two years and eight months after the first warrant, the certificate was returned. The Proprietary granted the land to the defendant when the contract with those under whom the plaintiff claims, was void.

CHASE, Ch. J.  The court are of opinion in this case, that the patent to *Robert Peter* cannot relate to the certificate of *The Resurvey on Pipe Tomahock*, so as to over-reach the prior grants made to *Thomas Mains* for the land called *The Grove* and *Hazard*, the relation to the certificate being grounded on the principle of a superior equity; and in this case *Postlewait*, and *Robert Peter*, who procured an assignment of his certificate, had no equitable title to the land, not having returned his certificate of survey to the land office, nor paid the composition money within two years. The court therefore give the direction to the jury prayed for by the defendant.

The plaintiff excepted. The verdict and judgment being for the defendant, the plaintiff appealed to the Court of Appeals.

THE COURT OF APPEALS *affirmed* the judgment of the General Court, at June term, 1802.