HARVARD LAW SCHOOL LIBRARY.

FRANKLIN BETTS ET AL.
vs.
JOHN W. WIRT ET AL.

} SEPTEMBER TERM, 1851.

[CONVERSION OF REALTY INTO PERSONALTY—DOCTRINE OF RELATION.]

WHERE land is sold under the Act to direct descents, or by a trustee under the Act of 1785, ch. 72, for the purposes of partition, or for the payment of debts where the personal estate proves insufficient, the mutation from realty to personalty is not effected until the sale has been finally ratified, and the purchaser has complied with the terms of it.

The ratification of the sale, and compliance with the terms of it by the purchaser, when done, do not relate back and work a conversion from the day of sale.

The doctrine of relation does not apply to such a case; this doctrine is founded upon a principle of equity, and is never admitted to prevail unless required to advance the purposes of equity.

Patents of lands relate back to the certificate so as to overreach prior grants, only when the holder of the prior certificate has a superior equity.

As between the heirs at law, and the next of kin, the superior equity cannot be with the latter; the policy of the law is to permit the estate to descend in the line of the ancestor from whom it came, and the inclination of the courts should be in favor of the heir.

[The facts of the case are fully stated in the opinion of the Chancellor.]

THE CHANCELLOR :

This case is submitted to the Court upon exceptions to the report of the Auditor by which the residue of the proceeds of the sale of the real estate in the proceedings mentioned, was assigned to the heirs at law of Annie Mercer, and not as the acceptants insist it should have been, to her personal representatives, and through them to her next of kin, under our statute of distributions.

The land sold was the property of William D. Mercer, deceased, and upon his death intestate descended to Annie Mercer, his infant child and only heir at law. The personal estate of the father being insufficient to pay his debts, a creditor's bill for the sale of the realty was filed, and a decree was passed for that purpose. Under this decree a sale was made on the 16th of November, 1850, and a conditional order of ratification obtained, but before the final ratification, or the time limited to show cause against the ratification had elapsed, Annie Mercer, the infant heir, died, her death having occurred on the 10th of December, 1850, and the sole question raised by the exceptions is, whether the surplus proceeds of sale after paying the debts of the father should be given to the heir at law, or the personal representatives of his daughter and heir.

Upon the death of William D. Mercer, his land of course, descended to his heir at law, subject, however, to the claims of creditors, and the question therefore is, whether at the period of the death of his daughter and heir, the proceedings in this case had progressed to that point, which, according to the doctrine applicable to the subject, had changed the nature of the property and converted that into personal which had been real estate.

Upon this question very elaborate and well-considered written arguments have been prepared and presented by the counsel of the respective parties, which I have read with attention ; and I should have much difficulty in coming to a conclusion upon the subject, but that I am strongly impressed with the conviction that the point upon which the controversy

turns has been in principle, if not in terms, decided by the Court of Appeals in the several cases of *The State* vs. *Krebs*, 6 *H. & J.*, 31; *Leadenham* vs. *Nicholson*, 1 *H. & G.*, 267; and *Hammond* v. *Steir*, 2 *G. & J.*, 81.

These it is said were cases under the Act to direct descents, and the question was at what stage of the proceedings the lands of the wife were changed into money, and thus placed under the control of the husband, or liable to the demands of his creditors. They were not, however, all of them cases under the Act to direct descents; two of them being cases under the 12th section of the Act of 1785, ch. 72, which provides for the sale of lands held by infants, &c., jointly or in common with any other person, when it is made to appear by pleadings and proofs that it will be for the interest and advantage of all the parties that a sale should be made.

It seems to me, however, not to be at all material, by what statute, or for what purpose, the land may be ordered to be sold; and the Court of Appeals say expressly in the case of *Leadenham* vs. *Nicholson*, that the rule established in the prior case of *The State* vs. *Krebs*, where the land had been sold under the Act to direct descents, and the proceeding to affect the money was by attachment in a court of law, was applicable to and should prevail in equity.

The question in all the cases was, whether there had been a mutation of the real into personal estate, and the decision was: " that the mutation may be determined to be complete when the commissioner's sale is ratified by the Court, and the purchaser has complied with the terms of it by paying the money, if the sale is for cash, or by giving bonds to the representatives, if the sale is on a credit." This language, to be sure, was used with reference to a sale by commissioners under the Act to direct descents, but it was adopted by the Court as furnishing the true rule, in the case of *Leadenham* vs. *Nicholson*, where the sale was made by a trustee under the 12th section of the Act of 1785, ch. 72.

I take it therefore to be clear, that whether the sale is made by commissioners under the Act to direct descents, or by a

trustee under the Act of 1785, ch. 72, for the purpose of partition, or under the provision of the 5th section of the last-mentioned Act, where the personal estate is insufficient, that the real estate is not changed into personal until everything has been done to effect the mutation which the Court say is necessary for that purpose.

The question is not what form the thing has assumed when the Court is called upon to dispose of it. The rights of the parties do not depend upon whether it be then in fact money. In the case of *The State* vs. *Krebs*, the Court, speaking of the property of the wife in the hands of the commissioners, say, "It is in fact money, but the point of hesitancy is whether, in legal contemplation, it is to be so considered;" and the Court in that case held the mutation to be complete, and that the money was at the disposal of the husband, and liable for his debts, because everything necessary to consummate the transmutation had been done.

The counsel for the personal representatives of course do not deny that the conversion is not complete until the sale is finally ratified, and the terms complied with by the purchaser, but they insist that when this is done, "the ratification relates back and works a conversion from the day of sale." In other words, they maintain that the doctrine of relation applies to the case and carries with it the consequences for which they contend. It is true as they say that the Maryland cases do not explicitly decide this point, but I am far from thinking they reflect no light upon it. If the Court of Appeals had meant that upon the final ratification of the sale and compliance of the purchaser with the terms, the conversion should relate back to the day of sale so as to change the nature of the property from that period, it seems to me they would have said so. The Court, after much reflection, undertake to determine, and do determine, the acts which shall change the property from real to personal, and they say, *when* those acts are done, the change shall be complete. And it seems to me so reasonable that if they intended that the performance of the acts should work a change

from an earlier period they would have said so; that I cannot bring myself to think they meant any such thing.

On the contrary, when settling for the first time and finally a very important principle, the Court would seem to have expressed themselves with less of precision and clearness than usually distinguishes their language if they did not mean that the mutation is complete, when the acts specified are done, and not until then, and that it could not be carried back to an earlier period by the doctrine of relation.

In truth, in my view of the relative equities of the heirs-at-law, and next of kin of parties who die before the mutation of the estate is complete, I see no foundation upon which the principle of relation can be placed. The doctrine of relation is founded upon a principle of equity, and is never admitted to prevail unless required to advance the purposes of equity. It is most frequently resorted to in cases of patents for land granted by the State, which when equity requires it, are permitted to relate back to the certificate so as to overreach prior grants, but this is never done, except when the holder of the prior certificate has a superior equity. *Peter's lessee* vs. *Mains*, 4 *H. & McH.*, 423. But as between the heirs-at-law and next of kin, the superior equity cannot be with the latter. On the contrary, looking to the general policy of the law and the desire always manifested to permit the estate to descend in the line of the ancestor from whom it came, the inclination of the Court should be in favor of the heirs, as otherwise the benefit of the inheritance would most frequently be enjoyed by those who are alien to the ancestor's blood. This policy is strikingly displayed in the 9th section of the Act of 1816, ch. 154, which provides that upon the death of an infant whose lands are sold under that Act before arriving at lawful age or without issue, the proceeds of the sale or the stock in which the proceeds may be invested, shall be considered as real estate, and as such shall descend to those heirs or representatives who would be entitled to the lands in the same manner as if there had been no sale. Here it is seen that though the mutation is complete, the sale not only having been made and finally rati-

fied, but the proceeds existing in money or stock, yet still such is the desire of the law that the blood of him who acquired the property, or from whom it descended upon the infant, should have the enjoyment of it, that the fruits of the property, though its nature is entirely changed, is under the circumstances stated, given to those to whom it would have descended if its original character of real estate had been preserved.

There could not be a stronger illustration of the policy of the law than this, and though the land in the present case was not sold under the provisions of the Act of 1816, it cannot be improper to refer to it as indicating the general policy of the legislature upon the subject.

I should, therefore, proceed at once to ratify the report of the Auditor, giving the residue to the heirs-at-law, but for a difficulty suggested in the report itself, and that is that it does not clearly appear whether the land was or was not sold subject to the dower right of the defendant, Margaret S. Wirt. When that difficulty is removed, an order will be passed.

HENRY C. MACKALL and LEVIN GALE, for Exceptants.
JOHN C. GROOME, for the Heirs-at-law.

An appeal was taken from the order of the Chancellor passed in conformity with the above opinion, which is still pending.