THE STATE use ROGERS, *vs.* KREBS *et al.* Garn. of HORNE.

APPEAL from *Baltimore* county court. The cause, which is sufficiently stated in the opinion delivered by this court, was argued at June term last before BUCHANAN, EARLE, and STEPHEN, J.

*Williams,* for the appellant. 1. The subsequent acquisitions of *Horne* were not discharged from a liability to be taken in execution under the judgment against him, on which the attachment in this case issued, by *Horne's* release under the general insolvent laws; both because the bond, on which the judgment was obtained, was executed before the passage of those laws, and because his release was only of his person. 2. His release, under a special insolvent law, has not the effect to discharge his future acquisitions; because that law, and the general laws to which that law refers, were passed *subsequent* to the execution of the bond, on which the judgment was obtained. 3. Under the decision of the supreme court of the *United States,* a discharge, in pursuance of a state insolvent law, cannot constitutionally have the effect to release the future acquisitions of an insolvent petitioner. 4. The judgment rendered in this case was not made subject to *Horne's* discharge under the insolvent law, but was an absolute judgment. 5. The money arising out of the sale of the real estate of Mrs. *Horne,* by the commissioners under the act to direct descents, was personal property, and belonged to her husband, and, as his property, was consequently liable to be taken in execution for the satisfaction of a judgment obtained against him. *(a)*

This court adopting the decision of the supreme court, the last point only is necessary to be attended to, and it is the principal point in the case. The funds attached in the hands of *Krebs,* and others, were a subsequent acquisition of personal property by *Horne,* except to the value of his tenancy by the curtesy, which belonged to his trustee. The *real* estate of his wife was sold pursuant to the acts to direct descents. It is converted into *personal* property; for by those acts there is nothing in them which ex-

1823.

The State
vs
Krebs

JUNE.

This court had adopted, and considers itself bound by the decisions of the supreme court of the *United States* respecting the state insolvent laws. *(note)*

Where the real estate of a *feme covert* is sold under the act to direct descents, the mutation of her estate from real to personal is complete when the commissioners' sale is ratified by the court, and the purchaser has complied with the terms of it, by paying the money, if the sale was for cash, or by giving bonds to the representatives, if the sale was on a credit.

The bond passed to the wife by the purchaser is a *chose in action,* as is the money in the hands of the commissioners, if withheld from her; both liable to be sued for and recovered by the husband alone.

The money thus in the hands of the commissioners may be attached by the husband's creditor to satisfy a debt due by him. The money, being at the disposal of the husband, in truth and in law his, and is liable for his debts, and can never be enjoyed by the wife but upon the single contingency of her surviving her husband before an appropriation is made of it by him.

*(a)* BUCHANAN, J. This court has adopted, and considers itself bound by the decision of the supreme court of the *United States,* respecting the state insolvent laws.

1823.

The State
vs
Krebs

empts such proceeds from becoming personal property, the moment the land is sold and paid for—1786, *ch.* 45, *s.* 8. When it becomes the personal property of the wife, *eo instanti* it becomes the personal property of the husband; and as such, becomes liable to all the incidents his personal property is subject to, and consequently to that of being attached to pay his debts. The commissioners are the husband's agents, or his stakeholders, for this collection. The purchaser has paid over the money to them, and they have made the deed. The instant the legal interest has passed from the commissioners, and they have received the money, they are clearly his depositaries of the money. It is an acquisition subsequent to his release; because, when he applied for the benefit of the insolvent law, and executed a deed to his trustee, all the interest which he had in his wife's real property was an eventual tenancy by the curtesy. Property in the hands of a sheriff may be attached.—*Davidson vs. Clayland, Garn. of Blake,* 1 *Harr. & Johns.* 546. *Campbell vs. Morris,* 3 *Harr. & M'Hen.* 556. Decisions have been made in our court of chancery of the real estate having been converted into money, and became personal property. This was done in the case of *John Spurrier's* estate in 1813, and in that of *Price's* estate. In *Spurrier's* case, the wife of one of the claimants died after the decree, and one of the sales under it, yet the chancellor directed the whole proceeds to be paid to the husband.

*R. Johnson,* for the appellees. The fifth question may be divided into two branches—1st. Whether the funds in dispute are the personal property of the husband; and if so, 2d. Whether they are liable to attachment under the act of 1715, *ch.* 40?

1. The act of 1786, *ch.* 45, never intended to deprive the wife of her real estate, or the proceeds of it. The case of *Spurrier* was under the act of 1785, leaving it discretionary with the chancellor to appropriate the fund for the advantage of the parties concerned. The county court of *Prince-George's (Gantt,* Ch. J.) decided, in the case of *Duckett's* estate, that the proceeds of the real estate, under the act of descents, should be considered as real estate. Courts of equity will not let the husband get possession of money of the wife, unless he will give secu-

rity to settle it on the wife.  1 *Fonbl.* 95, *(note K.)* Suppose in this case *Horne* had applied for the money, would not *Baltimore* county court, being a court of equity, have compelled him to give security to settle it on the wife? *Attorney General vs. Whorewood,* 1 *Ves.* 548. *Adams vs. Pearce,* 3 *P. Wms.* 13. If *Horne* could not get the money without security, or settling it on his wife, then his creditors could not affect it in this way. In *Davidson vs. Clayland,* the surplus of the money remaining, after satisfying the *fieri facias* under which land was sold, was considered as land.  The act of 1786 directs, that the money shall be divided among the heirs according to their titles to the estate. The interest of the tenant by the curtesy was valued at ten dollars; and his wife had an interest in one fourth of the purchase money, subject to the payment of the ten dollars.

2. If it was the personal property of the wife, and the husband could get possession of it, does it follow that it can be attached? It was a *chose in action,* and it was discretionary with the husband whether or not he would reduce it into possession. 2 *Blk. Com.* 434. If he does not, no other person can do it for him. Suppose this a note to the wife, and the husband had not chosen to turn it into possession, could the creditor do so by any proceeding? It is similar to a devise of an estate to A, on condition he changed his name. The act of 1798, *ch.* 101, is different from the statute of *Charles.* The husband, in *England,* has the right to administer on his wife's estate; and if there is a *chose in action,* not reduced into possession, it devolves on the wife's representatives. But under the act of 1798, if the husband does not take possession of the *choses in action* of his wife, they devolve on her representatives. This fund is in the hands of the commissioners, who are officers of the county court. There is no order for them to pay over the money. This case is not different from that of *Sowers vs. The State use Schell,* decided by this court. There is nothing to show that *Baltimore* county court would decree to *Horne* any part of the money. The funds are in the hands of the commissioners, and they are responsible for them to the court.

*Williams,* in reply. The last point is a matter of fact. The proceeding was not before *Baltimore* county court as

a court of equity, it was under the act to direct descents. The sum and proportions have been ascertained by the county court. But it is said to be a *chose in action*, and not liable. Creditors may pursue a *chose in action*. A *chose in action*, arising after the marriage, is reduced into possession, and is not similar to a *chose in action* before marriage. The cases in *Fonblanque*, *P. Williams*, and *Vesey*, are equitable cases of proceeds from the wife's estate. The application must be resisted by the wife or the children, or the money is paid over to the husband. That was not done here. By the act of 1786, *ch.* 45, s. 8, if the money was to have been considered as real estate, it would have been so stated. By the act of 1816, *ch.* 154, s. 9, the legislature has declared, that the money alluded to by that act is to be considered as real estate. Why not have said so in the act of 1786, if it was so intended? There can be no distinction between sales under the act of 1785, and that of 1786. Neither of them say the proceeds shall be considered as real estate.

*Cur. adv. vult.*

At this term the opinion of the court was delivered by EARLE, J. In this cause there was a *pro forma* decision by *Baltimore* county court on a case stated. Among other things, very foreign to the subject in controversy, the case in substance states, that in the year 1804 *Elizabeth Young*, wife of *Joseph Young*, *Mary D. Horne*, wife of *John S. Horne*, and *Rebecca Barney*, wife of *William B. Barney*, became entitled, by descent, to a certain undivided real estate, situate within the city of *Baltimore*, as heirs at law of their father, *Charles Ridgely*, and that *Rebecca Barney* died intestate of her undivided part thereof, in 1807, leaving three infant children, *Joshua Barney*, *Charles Barney*, and *Rebecca Barney*; that on the 27th day of April 1816, *Joseph Young*, and *Elizabeth* his wife, petitioned *Baltimore* county court for a division of the said real estate, according to the act of assembly entitled, "An act to direct descents," and the several supplements to the said act; and thereupon the appellees, *William Krebs*, *George Warner*, and others, were appointed commissioners for the purposes in the said laws prescribed, who reported to the court that the real estate would not admit of a division among the heirs, without loss and injury to them; that the said report was ratified by the court,

and none of the heirs having elected to take the said real estate at the value set thereon by the commissioners, the court directed the said commissioners to make sale of the same; who, pursuant to the directions of the court, did sell the real estate for the sum of $3,391 29, expenses deducted, which sale being approved of, the purchase money was accordingly received into their hands, between the months of August 1816 and May 1817, one third of which sum was paid over by the commissioners to *John Young*, and *Elizabeth* his wife, one third thereof to *William B. Barney*, as surviving husband and guardian of the infant children of *Rebecca Barney*, and the remaining third is still in the hands of the commissioners, subject to certain deductions agreed on by the appellant and appellees. The case also states, that in the year 1805, *John S. Horne* took out letters of administration on the estate of *Samuel R. Rogers*, with the will of the said deceased annexed, and in due form executed an administration bond, in the penalty of $30,000, on which bond a suit was instituted against the said *John S. Horne* in *Baltimore* county court, to September term 1815, in the name of the state at the instance and for the use of *Robert Rogers*, the sole legatee of *Samuel S. Rogers*, and that an absolute and unconditional judgment was obtained in said suit against the said *John S. Horne*, at September 1817, for the sum of $8,820 98 and costs. The case further states, that on the 15th day of December 1817, the writ of attachment in this cause, upon the judgment aforesaid, was issued, and was laid in the hands of the commissioners, between the issuing of it and the 12th day of March 1818, to affect the property or credits of the said *John S. Horne*, no part of the money arising out of the sale of the said *Mary D. Horne's* real estate having been paid over, but being then in the hands of the garnishees, the appellees in this cause.

On this statement of facts the question is made, whether the attachment is sustainable? It was decided in the court below against the attachment, and we are now called on to review the decision, and if necessary, to correct it.

In reflecting on this subject, the first doubt that arises in the mind is as to the nature of this property of the wife in the hands of the commissioners. It is in fact money, but the point of hesitancy is, whether in legal contemplation it is to be so considered? No discrimination is made by

the descent laws, between the interest of a *feme covert*, and that of any other heirs of the intestate. Those laws direct the commissioners, who have sold for cash, after the ratification of the sale, and the deduction of the expenses to be ascertained by the court, to divide justly the purchase money among the several persons interested, according to their respective titles to the estate; and when the estate is sold by the commissioners on a credit, bonds are to be taken by them for the purchase money, to each representative respectively, according to his or her proportional part of the nett amount of sales. The *feme covert* is treated like the other heirs, and it is to be presumed her property, after sale, assumes the same character as theirs. The money is to be paid to her as heir in the one case, and the bond is to be passed to her in the other, according to the injunctions of the act of assembly. A change in the nature of her property is thus operated by the sale of the commissioners, but the point of time when the change takes place, is a question of interesting consequence to the relative rights of her and her husband. Upon this question the court have deliberated, and we think that the mutation of her estate from real to personal may be determined to be complete when the commissioners' sale is ratified by the court, and the purchaser has complied with the terms of it, by paying the money, if the sale is for cash, or by giving bonds to the representatives, if the sale is on a credit. The bond passed to the wife by the purchaser is a chose in action, as is the money in the hands of the commissioners, if withheld from her; both liable to be sued for and recovered by the husband at his pleasure. But a difficulty was urged in argument to the recovery of the money in this case by the husband, and it was said that the court, where the sale of the wife's land was effected, would not permit him to receive the proceeds of the sale, without making a provision for his wife. To this it is to be answered, that the distribution of the money appears to have been made by the commissioners, and not to have been brought into the county court; and it is admitted in the statement, that the money of *Mary D. Horne* is still in the hands of the commissioners, ready to be paid to the person best entitled to it. To recover the money of the commissioners in such a case, the husband's remedy would be by a suit in a court of law, and the principle seems to

1823.
The State
vs
Krebs

be a settled one, that wherever a husband can come at the estate of the wife, without the aid of the court of chancery, that court cannot interfere in her behalf. See *Attorney-General vs. Whorwood,* 1 *Ves.* 539. *Hargrave & Thomas's Co. Litt.* 310. In what light we consider a county court, ordering a sale of real property under the descent laws, we do not mean to suggest; it is enough for us to say, that in this case the money was not brought into *Baltimore* county court, and that that tribunal had not an opportunity of exerting its authority over the subject, either as a court of equity or as a court of law.

We have already said, that where a bond has been passed to the wife, for the proceeds of the sale of her real estate sold by commissioners, or where a sale has been made for cash, and the money has been received and is withheld by the commissioners, the husband may sue for and recover those debts at pleasure, of the purchaser in the first case, and of the commissioners in the last. In the action in either case, he may join his wife with him, or the husband may sue alone at his election. That a husband may in his own name sue a bond passed to him and wife, or to the wife alone during coverture, there are many authorities to show, independent of the act 1798, *ch.* 101; and it is equally certain, that he may sue alone for a breach of promise made to him and his wife, after coverture, or to the wife only, to pay a sum of money to her. For the first position, see *Ankerstein vs. Clarke,* 4 *T. R.* 616, and *Philliskirk vs. Pluckwell,* 2 *Maule & Selw.* 396; and for the last, see *Hilliard vs. Hambridge, Aleyn's Rep.* 36, and *Prat vs. Taylor, Cro. Eliz.* 61. 1 *Selw. N. P.* 245. If the husband may sue alone, where an express promise is made to the wife, after coverture, what good reason can be assigned why he could not sue in the same way on a promise to the wife raised by implication of law, as in this case, had it been against the commissioners for the money had and received by them? The express promise, and the promise implied, are of the same character, as to the husband's claims, and resting upon similar principles, they ought to be adjudicated on in the same way. Let the law be considered as settled, that the husband may sue in his own name for money situated as this is in the hands of the commissioners, and it seems to follow necessarily, that it may be attached by the husband's creditor, to satisfy a debt due by him. If the commissioners and

garnishess here had plead *nulla bona* on the trial of the issue, it would have been competent to the plaintiff to give evidence of the wife's money in their hands, and it would have been sufficient to have sustained his case. The money being at the disposal of the husband, is in truth and in law his, and is liable for his debts, and can never be enjoyed by the wife but upon the single contingency of her surviving her husband, before an appropriation is made of it by him.

The judgment below we think ought to be reversed.

JUDGMENT REVERSED.