his appointment; and the insolvent laws requiring that he shall give bond, with security, for the faithful performance of his duty, before he acts as such; until such a bond is given, he is not invested with the functions of trustee, and can neither sue for, nor in any other manner intermeddle with the property of the insolvent. He is not, in contemplation of law, a trustee; his character as such is not completed, until the bond required, is given. The mere appointment, unaccompanied by his giving a bond, with security, confers upon him no power over the goods of the insolvent; but it is the bond, as constituting an ingredient in the appointment, and is the perfection of it, that gives him authority to act, and assert his rights in the character of trustee.

The bond, therefore, in this case, having been given after the suit was brought, the suit was instituted when the plaintiff was not clothed with any power to sue, or in any manner to interfere with the property of the insolvent, in the capacity of trustee, and cannot be maintained.

JUDGMENT AFFIRMED.

---

Hammond *et. al. vs.* Stier.—*December,* 1829.

Upon a petition by several heirs-at-law, certain real estate in which they were jointly interested, and which was not susceptible of a beneficial division among them, was decreed to be sold. A trustee was appointed; the land sold; and a report of the trustee, stating the proceeds of sale to be in his hands, was ratified and confirmed by the Court. Before the auditor had distributed these proceeds among the heirs, one of them, who was a married woman, died. HELD, That her surviving husband was entitled to her distributive share of the sale.

APPEAL from *Frederick* County Court, as a Court of Equity.

In *March,* 1823, a petition was filed by the heirs of *Vachel*

*Hammond,* formerly of *Frederick* county, deceased, setting forth that said *Vachel* died in December, 1821, seized and possessed of certain real estate in said county, which they pray may be sold, for the purpose of distribution among them, the same not being susceptible of division.    The petition represented that some of the heirs were of full age, some *femes covert,* and some minors.

A decree at the same term accordingly passed, for the sale of said real estate, which sale was duly made and reported, (the report stating the proceeds to be in the trustee's hands) ratified and confirmed by the Court, at July Term, 1823.    Afterwards, to wit, at August Term, 1826, the auditor of the said Court made his report, accompanied with an account between the estate of the said *Vachel Hammond* and the trustee, in which he allows "to the legal representative or representatives of *Elizabeth Stier,* deceased, wife of *Frederick Stier,* and who was one of the daughters and heirs of said deceased, *(Vachel Hammond)* the proportion coming to her from said estate," she the said *Elizabeth Stier,* having before that time departed this life, leaving her husband, *Frederick Stier,* alive, and three children, minors, (who are the appellants in this cause.)    On this report, the Court (SHRIVER, A. J.) passed the following order:    "Ordered, That the report of the auditor be, and the same is hereby ratified and confirmed; and that the trustee pay the proceeds accordingly, except the amount audited to the heirs of *Elizabeth Stier* deceased, which the trustee is required to retain until the further order of this Court in the premises."    At the same term a petition was filed by the said *Frederick Stier,* the appellee, the husband of *Elizabeth Stier* deceased, setting forth the proceedings upon the aforesaid petition for the sale of *Vachel Hammond's* property.    That on or about the 20th of March, 1825, the said *Elizabeth,* the former wife of the petitioner, departed this life, intestate, leaving the petitioner, her husband, surviving her, and claiming in that character, in the same manner as if he had taken out administration on her estate,

her proportion of the proceeds of the said real estate of her father, *Vachel Hammond.*

It was admitted that *Elizabeth Stier* died intestate on the 20th of March, 1825.

A petition was also filed at the same term by the appellants, (by their next friend and guardian, *Thomas Hammond*) referring likewise to the before mentioned proceedings, for the sale of *Vachel Hammond's* real estate, and claiming the proportion of the proceeds thereof, to which the said *Elizabeth Stier* would have been entitled, as her infant children, and heirs at law, "the said proportion arising from the sale of real estate belonging to the said *Elizabeth Stier.*"

The County Court (SHRIVER and TH. BUCHANAN, A. J.) on the 14th of November, 1826, ordered and adjudged, "that the report of the auditor in said cause, be, and it is hereby ratified and confirmed; and further adjudged and ordered, that the trustee pay to *Frederick Stier* accordingly his wife's proportion of her father's estate, amounting &c."

From this decree, the petitioners, *Adeline Hammond et. al.* appealed to the Court of Appeals.

This case was submitted to the Court of Appeals, on the notes of counsel.

*Tyson* for the appellant, contended, that the County Court erred, because the estate of the said *Elizabeth Stier*, in the premises was real, or such as should, in a Court of Equity, be regarded as real property, at the time of her death. It might be thought at first sight, that the case of *Rogers vs. Krebs et. al.*, 6 *Harr. and Johns.* 31, contains a decision in point. It is there stated, that "where the real estate of a *feme covert* is sold under the act to direct descents, the mutation of her estate from real to personal, is complete, when the commissioners' sale is ratified by the Court, and the purchaser has complied with the terms of it, by paying the purchase money, (if the sale was for cash) or by giving

bonds to the representatives, if the sale was on credit."
This case was relied upon by this Court as their authority
for adjudging that of *Leadenham vs. Nicholson*, 1 *Harris
and Gill*, 279. There, was a mutation of a *feme covert's*
estate from real to personal. The difference between the
two cases, and the difference between this and the first cited
case, is this: In the first case, the bonds were given directly
to the representatives, and in that way became *choses in
action*, and of course reducible by the husband, or reduced
into possession: in the two other cases, there was inter-
posed between the parties a trustee, in whom the whole
legal interest was vested. In the case now before the
Court, how was it vested? As real estate. When did it
cease to be real estate? surely not while the trusteeship
lasted. When did that terminate? only when there was
a fulfilment of the trust. It certainly did not terminate
in this case, at the time of *Elizabeth Stier's* decease in
1825, nor was it terminated at the time of the audit.
Will it be said that the nature of the trust was changed
by the death of *Elizabeth Stier?* Certainly it was not in
favor of the other parties beneficially interested. The fund
was real estate, as to them. How then could it be per-
sonal estate as to *Elizabeth?* Can a trustee support this
double character? or can any thing but the extraordinary
power of the Court of Chancery change the character of a
trustee; can it be changed by circumstances?

The ground of the decision in the case of *Rogers vs.
Krebs*, was, that the bonds were *choses in action.* The
ground in this case of *Frederick Stier's* claim, must be the
same. Can there be a *chose in action*, when there is no
cause of action? and what cause of action had *Elizabeth
Stier* at the time of her death in 1825; or did any cause of
action accrue before the confirmation of the auditor's account
in 1826. How could the husband become entitled to this
as a *chose in action?* Under all the circumstances of the
case, it is submitted, whether, *at the time of Elizabeth Stier's
death,* she had any *chose in action,* or any personal interest

that could be reduced into possession by her husband? If not, what subsequent act of her husband can make that a *chose in action* of *Elizabeth Stier*, which was not so at the time of her death.

*A. Randall* for the appellee, contended,

1. When those entitled to real estate, make an application to a Court of Chancery for the sale thereof, in order to the advantageous distribution of the proceeds, and the Court decrees a sale, and appoints a trustee therefor, who makes a report, stating that the sale has been made, and that the proceeds of the estate are then in his hands, according to the decree, which report is ratified and confirmed; then and in that case, a mutation of real estate into personalty is complete. 2. That if a *feme covert*, entitled to a proportion of such proceeds, die after the ratification of the sale, and compliance with the terms thereof by the purchaser, her husband surviving, the interest of the wife is a *chose in action*, which the husband is entitled to, if he, during his life, reduce the same into possession. 3. That the order of the Court, directing the trustee to pay over to the husband his wife's proportion of the proceeds of the sale of the real estate, is a reduction into the husband's possession, and makes the same absolutely his own. He cited, 2 *Pow.* 84. *State vs. Krebs,* 6 *Harr. and Johns.* 31. *Stevens vs. Richardson,* 6 *Harr. and Johns.* 156. *Jarrett's Lessee vs. Cooley, ib.* 258. *Leadenham's Ex'r. vs. Nicholson, et. al.,* 1 *Harr. and Gill,* 267. *Hurt vs. Fisher, ib.* 88.

BUCHANAN, Ch. J. We consider the case of *Leadenham vs. Nicholson, et. al.,* decided at June Term, 1827, as conclusive in this case, and

AFFIRM THE DECREE.