VIRGIL B. DALRYMPLE
vs.
ERICKSON H. TANEYHILL
AND WIFE.

} MARCH TERM, 1853.

[MUTATION OF REAL TO PERSONAL ESTATE.]

REAL estate, in which an infant was interested, was sold under a decree of this court, which sale was finally ratified and confirmed by an order of court. But the purchaser afterwards failed to comply with the terms of sale, and the trustee applied for a resale under the act of 1841, ch. 216, and an order passed accordingly, after which and before the second sale, the infant died. HELD —

That the mutation from realty to personalty was not complete at the death of the infant, the purchaser not having complied with the terms of sale, and her share of the proceeds of sale passed as real estate to her heir at law.

The mutation is complete when the sale is ratified, and the purchaser has complied with the terms of it by paying the money, if the sale is for cash, or by giving bonds, if the sale is on credit, and a concurrence of all these cir-cumstances is necessary to effect the change.

[The facts of this case are sufficiently stated in the opinion of the Chancellor.]

THE CHANCELLOR :

The facts upon which the questions presented by the excep-tions to the Auditor's report in this case arise, are few and simple, and may be briefly stated.

On the 23d of October, 1850, Virgil B. Dalrymple, in his own right, and Agnes E. Dalrymple, his daughter, then an in-fant, by the said Virgil, as her guardian and next friend, ex-hibited their bill in this court, praying for the sale of the real estate of Zachariah Taneyhill, lately deceased, intestate, upon the allegation that the same was incapable of partition, and that it would be for the interest and advantage of all parties con-cerned that it should be sold and the proceeds divided among the heirs at law. Dalrymple, the father of Agnes, had inter-married with one of the daughters and heirs at law of Zacha-riah Taneyhill, and she having afterwards died, he became tenant by the curtesy of her share of said estate, his daughter

Agnes as her sole heir at law being entitled to the remainder in fee.

It was subsequently ascertained that the estate was capable of partition, and a final decree of partition was made on the 1st of March, 1852, ratifying and confirming the return of the commissioners and assigning to the complainants, Dalrymple and his daughter, the former for life, and the latter in fee, that portion of said estate which was described in said return as Lot No. 1.

In the decree, power was reserved to the complainants to apply to the court for a decree for the sale of this lot, and for this purpose a commission was directed to be issued to such person as they might select to take proof to establish the allegations of the bill.

The necessary proof being obtained, the court, on the 16th of March, 1852, passed a decree in the usual form, for the sale of said parcel of land, and appointing a trustee for the purpose.

A sale was accordingly made to one Theodore Hodgkin, on the 11th of May, 1852, for the sum of $2140, a report thereof made, and a final order of ratification passed on the 19th of July following.

Hodgkin, the purchaser, having utterly failed to comply with the terms of sale, the trustee on the 2d of August, of the same year, in pursuance of the provisions of the act of 1841, ch. 216, filed his petition, praying that he might be compelled to comply, or in default thereof, that the property might be resold at his risk and expense.

Hodgkin, upon notice, having failed to comply, or show cause to the contrary, the court, on the 8th of September, 1852, passed an order for the resale of the property at his risk.

Agnes E. Dalrymple, the infant, died on the 4th of October following, intestate, and without issue, leaving her aunt, Mary E. D. Taneyhill her only heir at law, and on the 12th of the same month and year, the trustee, with the consent of Hodgkin, the first purchaser, sold the property at private sale to Erickson H. Taneyhill, the husband of Mary E. D., the aunt and heir at law of Agnes E. Dalyrimple, the infant.

This sale has been duly ratified, and the controversy as to a portion of the proceeds of the sale is between Virgil B. Dalrymple, the father and personal representative of Agnes, and Taneyhill and wife, in right of the wife, who is her aunt and heir at law.

Arguments have been addressed to the court to prove that the land in question, whatever may have been the form of the proceeding, must be regarded as having been sold under the act of 1816, ch. 154, and that if so, it is quite immaterial in what character the proceeds may be viewed, whether they are still to be considered as real, or to have been absolutely converted into personal estate, their destination is the same, and they still shall go to those who would be entitled to the land as if no sale had been made, and this undoubtedly is the effect of the 9th section of the act referred to.

I am not, however, quite prepared to say that the sale in this case was made under the provisions of the act in question. The bill was unquestionably framed with a view to the 12th section of the act of 1785, ch. 72, and, indeed, when it was filed, the circumstances of the case were not such as to justify a proceeding under the act of 1816, which contemplates a proceeding where infants alone are concerned, nor was the machinery prescribed by the latter act taken in connection with the 2d section of the act of 1818, ch. 133, resorted to.

But be this as it may, there can, I think, be no impropriety, on the contrary, there is an evident fitness, in looking to the provision of the act of 1816, and other laws displaying the same policy, when we are seeking to adjust the conflicting equities of the personal representative and heir at law of one who has purchased or acquired by descent real estate. And, in a doubtful case, this policy, so conspicuously manifested by the legislature and pervading the law of descents at all times, would not be without its influence upon the mind of the court.

Looking, however, to the circumstances of this case, it does not appear to me to be necessary to seek for aid from considerations founded upon legislative policy, or to be derived from the rules prescribing the path of descent of real estate.

In my opinion, there had not, in contemplation of law, been a conversion of the real estate of this infant, into personal estate at the period of her death, on the 4th of October, 1852, and therefore the proceeds derived from the subsequent sale on the 12th of the same month, must go to her who occupied the relation of heir at law to the exclusion of the personal representative.

I had occasion to consider this subject very carefully in the case of *Betts et al* vs. *Wirt et al*, decided on the 24th of October, 1851, and reported in 3 *Md. Ch. Decisions*, 113, and came then to the conclusion that the mutation from real into personal estate was *not complete* until every thing had been done to effect the mutation which the Court of Appeals, in the cases referred to, said was necessary for that purpose. The cases referred to were those of *The State* vs. *Krebs*, 6 *H. & J.*, 31; *Leadenhan* vs. *Nicholson*, 1 *H. & G.*, 267, and *Hammond* vs. *Steir*, 2 *G. & J.*, 81, in which, upon great deliberation, it was held, that "the mutation of real into personal estate was complete when the sale was ratified by the court and the purchaser has complied with the terms of it by paying the money, if the sale is for cash, or by giving bonds, if the sale is on credit." And no case can be found in which it has been held or intimated that the concurrence of all these circumstances is not necessary to effect the change.

Certainly it would be very strange in the court of last resort to undertake to lay down, with precision, and, as they say, great deliberation, the rule which should govern in these cases, if they have committed the inaccuracy imputed to them in requiring a condition not at all essential to the purpose in view.

The argument pressed now is, that one of the circumstances, and that a very important one, which the Court of Appeals say is necessary to work the mutation from real to personal estate may be dispensed with; that the sale, and the confirmation of the sale by the court, are sufficient for the purpose, though the purchaser may have neglected to comply with the terms, either by paying the money or giving the bonds, though the appellate court have said, when the question was, what combination of

circumstances shall change the nature of real and impress upon it the character of personal estate, that a compliance by the purchaser with the terms is necessary. If the purchaser does not comply with the terms of sale, the thing, which is the equivalent for the real estate sold, does not exist, and may never exist. The land would be gone, or its nature changed, and neither money, or security for the money to be paid for it brought into existence.

In this case, Hodgkin, the first purchaser, bid, and the property was struck off to him for $2140. If the land was changed from real to personal estate by the ratification of this sale, into what was it changed? Why surely into the purchase money. But the purchase money has been neither paid or secured to be paid, and, therefore, it would follow, if the argument pressed be sound, that the real estate would be gone, and the only equivalent for it would be the bid of an insolvent man, who, according to the petition of the trustee, asking for authority to resell the property, had not only refused to comply with the conditions of the sale, but was trifling with the court and baffling its authority. Surely it would be very unwise to adopt a principle from which such consequences must necessarily follow. If real estate is converted into personalty, and especially the real estate of minors, it should be into something tangible and substantial, and the mere bid of an irresponsible man, though that bid may have been accepted by the court, cannot be permitted to have such an effect. The act of 1841, ch. 216, under which the proceeding for a resale was had, gives no countenance to the idea that a non-complying purchaser is regarded as the owner of the estate sold by a trustee. It authorizes a resale of the property at his risk, but not as his property, on the contrary, the order which the court is authorized to pass by this act, and the order which was in fact passed in this case is a revocation of the order confirming the sale and destroys any inchoate title which the first purchaser may have acquired by the confirmation.

The case of *Hunter* vs. *Hatton and Kendrick*, 4 *Gill*, 116, has been referred to as an authority to prove that the title of the

purchaser, at sales of this description, vests when the order of ratification is passed, and that the trustee's deed is not necessary. But, in my opinion, the case supports no such proposition. It decides simply that the deed of the trustee does not operate merely from the time of its execution, but being a conveyance under a judicial sale upon the principles of relation, it operates retrospectively, and vests the property in the grantee from the date of the sale. But if the sale and the ratification of that sale by the court, *per se*, passed the freehold, where the necessity of resorting to the doctrine of election. That doctrine rests upon a principle of equity, and is intended to protect the title of a party who has complied with his contract in the intermediate period between the inception and consummation of his title.

My opinion, therefore, is, that there was not in contemplation of law, at the period of the death of the minor, Agnes E. Dalrymple, a mutation of her real into personal estate, and I shall pass an order confirming the Auditor's account, which gives the proceeds of the last sale to her heir at law.

STOCKETT, for the Personal Representative.
RANDALL and HAGNER, for the Heir at Law.