JOSEPH Q. E. EARLY, Guardian to MARY M. EARLY
vs. DORSETT, HARRIS & Co., and others.

*Mutation of Realty into Personalty—Interest of the original
Purchaser in the proceeds of a Re-sale—Mortgage—Chose in
action—Attachment laid in the hands of a Trustee—Practice
in Equity.*

Certain real estate devised by will having been sold for the purpose of dis-
tribution among the devisees, S., one of the distributees, became the pur-
chaser and complied with the terms of sale by paying the cash instalment of
the purchase money and giving his bonds for the balance. Before the whole
purchase money was paid, S. mortgaged his right, title and interest in the
land to E. Subsequently on the default of S. in paying the balance of the
purchase money, the property was sold under an order of re-sale, for much
less than it sold for the first time. E. recovered a judgment against S.
on his mortgage claim and caused an attachment to be issued thereon,
and laid in the hands of the trustee making the sale. After the date of the
service of the attachment, S. assigned to certain creditors his interest as
distributee in the proceeds of said sale. HELD :

1st. That S's share of the net proceeds of the original sale, as one of the dis-
tributees thereof, was at the time the mortgage was executed, a mere *chose
in action*, and not an interest in land.

2nd. That his said share did not pass under the mortgage, which was simply
a mortgage of all his right, title and interest *in the land* which he had pur-
chased under the decree.

3rd That if there were a surplus of the proceeds of the re-sale over and above
what was necessary to pay the principal and interest due of the original
purchase money, and costs and expenses incident to the re-sale, such surplus
passed under the mortgage.

While the case was before the auditor for an account and distribution of the
proceeds of the re-sale, E. the attaching creditor filed his petition, claiming
the benefit of his attachment and exhibiting with his petition the attach-
ment and the proceedings thereon. HELD :

That the Court having been notified by the said petition of the pendency of the attachment proceedings before the ratification of the auditor's accounts, should have ratified the account ascertaining the amount of the distributive share of S., but should have suspended action upon the accounts disposing of that share, for a reasonable time, in order to allow the attaching creditor an opportunity to obtain, if he could, a judgment of condemnation in the attachment case, or the trustee to confess such judgment, which he could then safely do without incurring personal responsibility.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court. Account K referred to in the opinion, awarded John T. Sasscer's distributive share of the proceeds of the re-sale, to his mortgagee, the appellant. The Circuit Court passed an order rejecting Account K, and affirming Accounts L and M, and dismissing the petition of Joseph Q. E. Early, guardian, &c., filed on the 23rd of April, 1875. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*C. C. Magruder* and *William H. Tuck,* for the appellant.

*Joseph K. Roberts, Jr.,* for the appellees.

MILLER, J., delivered the opinion of the Court.

The controversy in this case relates to the disposition to be made of the distributive share of the proceeds of certain real estate belonging to one of the distributees. The material facts, as disclosed by the record, upon which the questions to be decided arise, are substantially as follows:

In December, 1858, a decree was passed by the Circuit Court for Prince George's County, for the sale of real estate devised by will, for the purpose of distribution

amongst the devisees. The trustee sold the property to Sasscer, *one of the devisees*, for $14,175, and that sale was finally ratified in May, 1859. The purchaser complied with the terms of sale by paying the cash instalment, and giving bonds with approved security for the other instalments, and in January, 1862, while in possession of the estate as purchaser and equitable owner, but before he had paid the purchase money in full, or obtained a deed from the trustee, he *mortgaged* the land to Early, the appellant. After having paid more than half the purchase money he made default as to the rest, and on petition of the trustee an order of re-sale was passed in March, 1870. That order is in the usual form, directing the trustee to sell the property for payment of the purchase money due therefor, with interest and costs, and that the sale shall be at the risk of Sasscer the purchaser. Under this order the trustee re-sold the property for $9600, and this sale was finally ratified in November, 1870. In April, 1872, Early recovered a judgment against Sasscer, on which in November, 1872, he issued an attachment, and caused it to be laid in the hands of the trustee as garnishee, to affect all Sasscer's interest in the proceeds of sale of this property, and it appears that this attachment proceeding is still undecided and pending in the law Court. After the attachment had been thus laid, Sasscer, in order to secure certain debts due them, made assignments of his distributive share of these proceeds, to the appellees, that to Dorsett, Harris & Co., being dated the 3rd of December, 1872, and that to Clarke and Hance, the 18th of April, 1873. These assignees filed their assignments on the 22nd of April, 1873, and claimed that Sasscer's share should be paid to them thereunder. Shortly before this, on the 8th of April, 1873, Early filed a petition in the cause, claiming all of Sasscer's interest in the proceeds of the re-sale, under the mortgage of January, 1862, and asking that the case be referred to the auditor, with direction to state an account

distributing the fund with a view to ascertain Sasscer's share therein, and directing the trustee to pay such share to the petitioner in part payment of his mortgage debt, or to have it credited on his purchase, he having purchased the property under the re-sale.

Afterwards in January, 1874, the auditor stated and reported several accounts, some of which are in the record and others omitted. These accounts profess to deal solely with the proceeds of the re-sale, and we have nothing before us showing any distribution of the purchase money under the original sale. In one of these accounts the distributive share of Sasscer is ascertained to be $1718.55 and this is the fund in controversy. By one account this sum is awarded to Early, in part payment of his mortgage debt, and by others, to the appellees under the assignments by Sasscer to them, and exceptions were taken by both parties to the several accounts opposed to their respective claims. Up to this period, and indeed as it appears until after the exceptions had been argued, the appellant based his claim exclusively upon his *mortgage*. But on the 23rd of April, 1875, before the Court had rendered any decision, he filed an additional exception and a petition, in which he relies also upon his *attachment*, and insists that by laying the same in the hands of the trustee, he has acquired a prior lien, giving him a better right to the fund than that derived to the appellees under their subsequent assignments, and praying that the fund may be awarded to him as attaching creditor, or that such order or decree may be passed in reference to his claim under the attachment, as may be equitable in the premises. We have therefore to decide whether the appellant is entitled to this fund, or any part of it under his mortgage, or to any relief in respect to his claim thereto based on his pending attachment.

1st. As to the claim under the mortgage. It has been the settled law of this State since the case of *Leadenham*

*vs. Nicholson*, 1 *H. & G.*, 267, that where land is sold under a decree like the present, the mutation from realty to personalty is complete when the sale is ratified and the purchaser has complied with the terms of sale as prescribed by the decree. The interests of the distributees in the proceeds of such a sale, then become *choses in action* and assignable as such. Hence Sasscer's share of the net proceeds of the original sale, as one of the distributees thereof was, at the time this mortgage was executed, a mere *chose in action* and not an interest in land. From this it appears to us clearly to follow, that his share of these proceeds did not pass under that mortgage, unless it contains some terms capable of effecting an assignment of such share. We have examined the instrument with that view and can find nothing in it which can operate as a conveyance or assignment of the mortgagor's interest in these proceeds. It is simply a conveyance by way of mortgage of all his right, title and interest *in the land*, which he had purchased under the decree. If therefore, the sum in controversy represents *exclusively* purchase money under the original sale, the Circuit Court was right in rejecting account K, which awards it to the mortgage debt. But if this sum or any part of it, is the surplus proceeds of the *re-sale*, over and above what was necessary to pay the principal and interest due of the original purchase money, and costs and expenses incident to the re-sale, then it is conceded that such surplus passed under the mortgage. The grounds upon which in a case like this, where there is a re-sale at the purchaser's risk, to enforce payment of unpaid purchase money, the purchaser is held responsible for the deficiency, and is entitled to the surplus resulting from the re-sale, are very fully stated in the recent case of *Mealey vs. Page*, 41 *Md.*, 172. The appellant in respect to his mortgage, occupies substantially the same position as if he had taken a mortgage of real property, subject to a vendor's lien for unpaid purchase money, and the land had

been afterwards sold under a bill to enforce that lien. In such case if the property does not sell for enough or only for enough to pay the lien, the mortgagee gets nothing, if it sells for more, he gets the surplus.

We are unable however, from what appears in the record, to determine whether the sum in controversy, or any part of it consists of such surplus. The auditor does not appear to have made any statement or account for the purpose of ascertaining the fact, and in order that it may be ascertained, and if there be such surplus, that it may be applied to this mortgage, we shall reverse that part of the order appealed from which rejects account K.

2nd. As to the claim under the attachment. It has been settled by the more recent decisions in this State, that an attachment may be issued and laid in the hands of a trustee in equity before a final account, and that such attachment will hold and be good, if at any time before trial or judgment, the share of the fund in hand belonging to the debtor is ascertained by a final account. This proposition was distinctly announced and established in the case of *Groome vs. Lewis,* 23 *Md.,* 137, in which all the antecedent decisions upon the subject are reviewed, and it rests upon the peculiar and well known character of the attachment process. This process when pursuing credits, unlike ordinary suits, does not necessarily relate back to the impetration or service of the writ, but operates upon credits in the hands of the garnishee, and liable to condemnation not only at the time of service, if then attached, but at the time of trial and judgment, and at any time after service and before trial and judgment. Hence, when a trustee in equity has sold property, the proceeds of which are to be distributed to various parties, a creditor of one of the distributees, may lay an attachment in the hands of the trustee, before a final account, ascertaining the precise share of the debtor, has been stated and ratified, and if at the time of the trial of the attachment case, such account has been so stated and ratified, the judgment of condemnation, if

obtained, will be effective upon the sum so ascertained to be the debtor's share. In that state of case the account enables the trustee to confess the amount in hand, as well as respond to the judgment of condemnation, without prejudice to himself or contempt of the jurisdiction to which the fund had been subject. Such we understand to be the result of the law, and the reasons for it laid down in the case referred to, and also in the subsequent case of *Hardesty vs. Campbell*, 29 *Md.*, 533.

Now in the case before us the appellant's petition of the 23rd of April, 1875, brought to the notice of the Court the fact that his attachment had been laid in the hands of the trustee prior to the date of the assignment under which the appellees claim, and with the petition was exhibited the attachment and the proceedings thereon. The petition avers that these proceedings were still pending, awaiting the auditor's report ascertaining the dividend or share of Sasscer in the fund, and its ratification by the Court, and that the appellees, Dorsett, Harris & Co., after appearing as claimants in the attachment case, had filed their claim under the assignment to them, in this cause and had directed the auditor to allow it out of Sasscer's dividend which the auditor has done by account L. At this time the Court had before it for ratification, among others, account H, which ascertained the amounts of the shares of all the respective parties, including Sasscer, in the net proceeds of the re-sale, and to this account no exceptions had been filed and no objections made by any one. On this state of case being shown, it was, we think, the duty of the Court to have ratified account H, and to have suspended action upon accounts L and M, which awarded the fund to the appellees, for a reasonable time, in order to allow the appellant an opportunity to obtain, if he could, a judgment of condemnation in the attachment case, or the trustee to confess such judgment which he then could safely do, without incurring personal responsibility. By so doing no conflict of jurisdiction would have arisen,

and a way would have been left open for the appellant to make his attachment effective. This, in our opinion, is the course which the Court ought to have adopted, in order to prevent an injustice to the appellant by a practical defeat of his claim under the attachment. But instead of doing this, it appears that the Court on the 24th of June, 1875, passed an order rejecting account K, ratifying accounts L and M, and directing the trustee to apply the proceeds of sale accordingly, and dismissing the appellant's petition. Subsequently on the 3rd of August, 1875, the Court passed another order ratifying and confirming account H, but added that this was not to affect the previous order upon accounts K, L and M. It is plain, however, that so long as accounts L and M stand thus ratified, the appellant can derive no benefit from further prosecuting his attachment, because by these accounts and the order ratifying them, the trustee is directed to pay the fund to the appellees, and he could not disobey that order without a contempt of the Court which passed it. From that difficulty the appellant seeks relief by this appeal, and in our judgment he is entitled to have it removed.

In view therefore of what we have said in respect to the appellant's claim in both of the aspects in which it has been presented, and in order to meet the justice of his case so far as it rests upon the attachment, we shall pass an order reversing the order of the 24th of June, 1875, from which the appeal is taken, and remand the cause for further proceedings in accordance with the views expressed in this opinion. This reversal leaves in force so much of the order of the 3rd of August, 1875, as ratifies and confirms account H, and this, as we have said, should have been the only order affecting this fund, passed in the first instance. The costs of this appeal must be paid out of the fund in dispute.

*Order reversed, and*
*cause remanded.*

(Decided 11th January, 1877.)