## CATHERINE WERNER ET AL. *vs.* LOUIS T. CLARK.

*Mortgages—Resale Upon Purchaser's Default—Right of Mortgagor to Except to Ratification.*

When, upon the failure of a purchaser at a mortgage sale to comply with its terms by paying the purchase price, the Court orders a resale of the property, the mortgagor has a right to except to the ratification of the second sale.

*Decided November 14th, 1908.*

Appeal from the Circuit Court for Howard County (FOR-SYTHE, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*Edgar H. Gans* (with whom was *Joseph L. Donovan* on the brief), for the appellants.

*Louis T. Clark*, for the appellees, submitted the cause on his brief.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Howard County, sitting as a Court of equity, ratifying a sale of mortgaged premises made under powers of sale contained in two mortgages.

The record discloses the following facts. The property in question was the property of one Charles J. Werner, deceased. After his death, intestate, his widow and six children on April 20th, 1894, united in the execution of a mortgage upon a tract of land in Howard County to Gabriella Mackubin to secure a loan to them of $1,200 payable one year after date with interest. On October 6th, 1902, the same parties, together with Louis Werner and Ethel Werner, united in the execution of another mortgage upon the same tract of land

and also upon another tract in Baltimore County, unto the German Building Association of Howard County, a body corporate, to secure a loan to them of $1,000 payable one year after date with interest, and these two mortgages were subsequently duly assigned to the appellee, Louis T. Clark for foreclosure, after default made thereunder.

On September 10th, 1907, the appellee filed copies of these two mortgages together with a bond as required by law, and advertised both said tracts of land for sale under the powers contained therein, but actually sold only the tract in Howard County. His report of sale, filed December 20th, 1907, shows that he sold this tract on December 18th, 1907, to Miss Catherine Werner for $3,850, who "elected to pay all cash on final ratification of sale, and gave satisfactory assurances of her compliance." The report also set forth that the proceeds of this sale would be more than sufficient to satisfy both mortgages, and that for this reason the appellee did not offer the other tract for sale. The usual order *nisi* was published, and on February 1st, 1908, this sale was finally ratified and confirmed.

On February 24th, 1908, the appellee filed a petition alleging that the purchaser, Miss Catherine Werner, had failed to comply with the purchase and found herself unable to do so, and he prayed for an order upon her "to show cause why an order should not be passed *setting aside said sale,* and directing an order of resale of said property at the risk of said purchaser." On the same day, the Court passed an order requiring "Catherine Werner to show cause on or before March 11th, 1908, *why said sale made in the above entitled cause should not be set aside,* and a resale ordered at her risk," provided a copy of said petition and order be served on her on or before February 27th, 1908.

She failed to show cause as required, and on March 20th, 1908, in due course of law, an order was passed "that the property mentioned in this cause, and sold by the petitioner, be resold by the said petitioner, Louis T. Clark, assignee, plaintiff in the above entitled cause, for the payment of the

purchase money thereof, viz. $3,850, as reported in the report of sale filed December 20th, 1907, &c. and it is further ordered that said resale be made at the risk of the said Catherine Werner."

It will be observed here that this order did not, in terms, provide that said sale should be set aside as prayed in the petition, and as provided in the order to show cause.

On April 24th, 1908, the appellee filed a report setting forth that in pursuance of said order of resale, he did, after due notice and advertisement, offer said property at public sale on April 21st, 1908, and sold the same to John G. Rogers for $2,800, and that said sale was made at the risk of the former purchaser, Miss Catherine Werner. The usual order *nisi* was again published, and on May 22nd, 1908, the day before the expiration of this order, two of the mortgagors in each of the two mortgages, Augustus H. and Frederick A. Werner, filed ten exceptions to the ratification of this sale. . On May 29th, 1908, the appellee filed a motion to dismiss these exceptions and that a day be set for the hearing, and on the same day the Court set the motion down to be heard on June 4th, 1908, after notice to the exceptants. The motion does not state the ground on which it was based, nor does the record disclose the ground, nor whether any hearing was had; but the appellee in his brief states that "this was upon the theory that the exceptants had no standing in Court in the proceeding relating to the resale," and there could be no other rational ground for declining to hear the exceptions.

On June 4th, 1908, an order was passed "that motion to dismiss be sustained, and *exceptants* be dismissed," and on the same day the resale was finally ratified and confirmed. The appeal was taken "from the order of Court dated June 4th, 1908." The two orders of that date though separately signed, cover but one transaction, and might properly have been made effective by one signing, as they were evidently concurrent in execution. The appeal will therefore be treated as taken from both orders.

The narrow question thus presented is well stated in the

appellants brief in these words: "When property has been sold under a power in a mortgage, and the purchaser fails to comply with the terms of sale, and a resale of the property is ordered and made, has the mortgagor any standing in Court to except to the ratification of the resale?" It is conceded in the brief of the appellee, and could not reasonably have been denied, that Miss Catherine Werner, *as the defaulting purchaser*, might have excepted to the ratification of the resale, *though she was one of the mortgagors*, but she did not except; therefore the concrete facts as hereinbefore recited, are accurately embraced in the question framed by the appellants' counsel, which must be taken as implying that the excepting purchaser is not *one of several* mortgagors, who if the sale to him were ratified, would acquire the interest of the other mortgagors in the property.

The appellee rests his case wholly upon the proposition that the effect of the ratification of the original sale, was to devest absolutely the title of the mortgagors, and to vest a complete equitable title in the defaulting purchaser, and that upon ratification alone, without more, "the mortgaged real estate became personal property, and the mortgagor's rights and interest in the former were transferred to the fund arising from the ratified mortgage sale." It has certainly never been expressly so decided in this State, and we do not think it could be so held consistently with our decisions involving this question.

*Dalymple* vs. *Taneyhill*, 4 Md. Ch. 171, decided in 1853, appears to be the earliest case decided after the passage of the Act of 1841, now sec. 209 of Art. 16 of the Code, declaring the authority of the Court to compel purchasers *under a decree* to comply with all the terms of sale, by process of attachment or other execution suited to the case, or to direct a resale at the risk of the purchaser.

In that case, land belonging to an infant had been sold under a decree for that purpose, and the sale had been ratified. The purchaser having utterly failed to comply with the terms of sale, a resale was ordered at his risk. The infant died

October 4th, 1852, and on the 12th of the same month the property was resold, and that sale was ratified. The controversy in the case was over the proceeds of this resale. The infant's personal representative claiming the proceeds as personal property while her heir at law claimed them as real estate—the question being whether there had been a conversion from real to personal estate, at the original sale during the life of the infant. CHANCELLOR JOHNSON held there had been no conversion, and that the proceeds of sale, though actually money was in legal contemplation, real estate, and went to the heir at law. He supported this conclusion by reference to the cases of *State* v. *Krebs,* 6 H. & J. 31; *Leadenham* v. *Nicholson,* 1 H. & G. 267, and *Hammond* v. *Stier,* 2 G. & J. 81, in which, as he says, "it was held upon great deliberation"—that —"the mutation of real into personal estate was complete when the sale was ratified by the Court, *and the purchaser has complied with the terms of it by paying the money if the sale is for cash,* or by giving bonds if the sale is on credit;" and the Chancellor adds, "no case can be found in which it has been held or intimated that the *concurrence of all these circumstances* is not necessary to effect the change." The appellee cites the case of *Early* v. *Dorsett,* 45 Md. 462, in support of his contention above, but we do not so understand that decision. JUDGE MILLER in the opinion in that case, expressly says: "It has been the settled law of this State since the case of *Leadenham* v. *Nicholson,* 1 H. & G. 267, that where land is sold under a decree like the present, the mutation from realty to personalty is complete when the sale is ratified and the purchaser has complied with the terms of sale as prescribed by the decree." The decree in that case was for sale of real estate devised by will for distribution among the devisees. One of the devisees became the purchaser, and he paid the cash instalment and gave bonds with security for the credit payments as prescribed by the decree. While in possession, but before payment in full of the purchase money or obtaining a deed from the trustee, he mortgaged the land to Early. He subsequently defaulted in his payments, and the property was resold at his

risk. The auditor stated several accounts distributing the proceeds of resale in one of which accounts the original purchaser's share was applied to Early's mortgage, and in another, to certain persons to whom he had subsequently assigned his share. There was no account showing any distribution of the original purchase money. The Court held that if the sum in controversy represented *exclusively*, purchase money under the original sale, it could not be applied to the mortgage, and should be applied to the assignments, and as it did not appear from the record whether any part of the sum in controversy, was the surplus proceeds of the *resale* over and above what was necessary to pay principal, interest, and costs due on the original sale, and costs of resale, the case was remanded to determine that fact. The Court said, "Early in respect of his mortgage, occupies substantially the same position as if he had taken a mortgage of real property, subject to a vendor's lien for unpaid purchase money, and the land had been afterwards sold under a bill to enforce that lien. In such case if the property does not sell for enough, or only for enough to pay the lien, the mortgagee gets nothing—if it sells for more, he gets the surplus."

It is apparent from the above examination of *Early* v. *Dorsett, supra*, that it does not sustain the proposition of the appellee.

Recurring again to the case of *Dalrymple* v. *Taneyhill*, the observations of the Chancellor are so pertinent to the case before us that we may profitably quote further from that case. He said: "The argument pressed now is, that one of the circumstances, and that a very important one, which the Court of Appeals say is necessary to work the mutation from real to personal estate may be dispensed with; that the sale, and the confirmation of the sale by the Court, are sufficient for the purpose, though the purchaser may have neglected to comply with the terms, either by paying the money, or giving the bonds, though the appellate Court have said, when the question was, what combination of circumstances shall change the nature of real and impress upon it the character of personal

·estate, that a compliance by the purchaser with the terms is necessary. If the purchaser does not comply with the terms ·of sale, *the thing*, which is the equivalent for the real estate sold, does not exist, and may never exist. The land would be gone, or its nature changed, and neither money nor security for the money to be paid for it, brought into existence. * * * If real estate is converted into personalty, it should be into something tangible and substantial, and the mere bid ·of an irresponsible, man, though that bid may have been accepted by the Court, cannot ·be permitted to have such an ·effect. The Act of 1841, ch. 216, under which the proceeding for resale was had, gives no countenance to the idea that a non-complying purchaser is regarded as the *owner* of the ·estate sold by the trustee. *It authorizes a resale of the property at his risk, but not as his property;* on the contrary, the order which the Court is authorized to ·pass by this Act, and the order which was in fact passed in this case, is a revocation of the order confirming the sale, and destroys any inchoate title which the first purchaser may have acquired by the confirmation."

We cannot discover that this clear and emphatic language of the Chancellor has ever been questioned or criticised in any decision of this Court, nor do we think it can be said that the principle announced by him has been disapproved in any such decision. It is true that in *Mealey* v. *Page*, 41 Md. 183 and 184, the Court said "The property was sold *as* that of the original purchaser; and at his risk, he being entitled to any excess in the proceeds of sale over and above the costs and expenses of the resale, the commissions on the amount of the proceeds thereof, *and the amount of the purchase money due on the former sale*." But the last clause of the sentence just quoted, which we have underlined, shows ·conclusively that the distinguished Judge who wrote that opinion did not mean to be understood as saying that the defaulting purchaser was to be regarded as the *owner* of the property, but that he meant that in any event the proceeds of the resale, after payment of costs and commissions properly allowable, was to be applied

to the amount of the purchase money due on the former sale, without regard to whom such amount was due. In other words, that any one interested in the property *when the original sale was made*, the purchaser not having fully complied with the terms of sale, still continued to be interested in the property, when resold by reason of 'default by the original purchaser. Or, as expressed in the passage quoted above from *Early* v. *Dorsett*, the purchaser at the original sale, after a resale for his default, occupies substantially the same position as one who purchases property subject to a vendor's lien. Or again as expressed in the appellant's brief, upon making the first sale there was a vendor's lien for the whole purchase money; this lien followed the property, under the resale, and enured to all the mortgagors equally, after satisfying the mortgage debt, interest and costs. What we have said as to *Mealey* v. *Page, supra*, is equally applicable to the case of *Aukam* v. *Zantzinger*, 94 Md. 421, which the appellee claims to be conclusive in his favor. In both these cases, the property brought *more* at the resale than at the original sale, and the question presented in the case before us did not arise, and was not dealt with. The vendor's lien for the original purchase money was fully satisfied out of the proceeds of the resale, and when that was done, but not until then, the original purchaser was entitled to the surplus, because the interest of the former owners of the property was then extinguished. This consideration shows why the Court, in *Aukam* v. *Zantzinger*, not only held that the first purchaser was entitled to except to the resale, but also why it held that the mortgagor was not so entitled. Here the conditions are reversed, and the same reason which required the Court in that case to hold that the first purchaser could except to the resale, requires us to hold that the mortgagor in this case is entitled to except to this resale. There is an outstanding vendor's lien in this case for $1,050, the difference between the two sales—and this difference after deducting costs, &c., represents the interest of the mortgagors in the property.

The case of *The State* v. *Second Nat. Bank of Hoboken*, 84

Md. 325, proceeds upon the principle announced in *Dalrymple v. Taneyhill.* The local law of Baltimore City provided that all real estate sold at public auction in said city should be subject to a certain tax, "each and every time it should be struck off" and this Court held that this provision applied only to "completed and consummated sales, and payment of purchase money." In that case the property was sold for $68,200, and this sale was confirmed by the Court, but the purchaser failed to comply with the terms of sale, and the property was resold by an order of Court—bringing only $55,300. The auditor allowed the tax on each sale, and on exception, the Court below disallowed the tax on the first sale and on appeal this Court affirmed the decision saying that "while under a judicial resale, the property is in fact again put under the hammer, it is put there, not as a new, distinct, independent procedure, but as a means and solely as a means to realize the money which the original but defaulting purchaser failed to pay. The resale takes place under the original decree, supplemented by an order, * * * and is made with a view to pay off the same indebtedness for the payment of which the property was sold in the first instance, and the money realized by it is always applied *precisely as would have been applied the money bid at the original* sale had that money *been paid by the first purchaser.* The resale is simply an execution of the decree for a sale. Its very name imports that it is not such a new sale as to be a distinct proceeding."

It is obvious that the above language applies as well to a sale under a power in a mortgage, as to sale under a decree.

As what we have said is decisive of this case it will be unnecessary to consider the other ground for reversal urged in argument. The sufficiency of the exceptions is of course not before us on this appeal.

> *Orders of June 4th, 1908, dismissing the appellants' exceptions and ratifying the resale, reversed with costs to the appellants above and below, and cause remanded.*