## HANCOCK ET UX. *v.* STULL

[No. 109, October Term, 1951.]

*Decided March 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE and MARKELL,, JJ.

*Robert W. Beall* for the appellants.

*Thomas S. Jackson,* with whom were *P. Baxter Davis, Louis M. Denit, Albert M. Bouic* and *Brandenburg & Brandenburg* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order dated May 17, 1951, dismissing a bill. A petition for a rehearing was filed on June 4, 1951 and denied on August 28, 1951. Plaintiffs also filed a petition praying an order "deferring the

enrollment of the decree and extending the time for the filing of an appeal." On June 12, 1951 an order was signed which provides that pending consideration and hearing on the petition for rehearing the decree of May 17, 1951 "shall not be enrolled" and that plaintiffs "shall have thirty (30) days from the date of the ruling upon the petition for a rehearing to file an appeal to the Court of Appeals". Plaintiffs filed on August 28, 1951 an appeal from the order overruling the petition for rehearing and on August 29, 1951 an appeal from the decree dismissing the bill "as well as" from the denial of the petition for rehearing.

The appeal from denial of a rehearing must be dismissed. Such an order is discretionary and is not appealable in the absence of abuse of discretion. *Jacobs v. Bealmear,* 41 Md. 484; *Bailey v. Bailey,* 186 Md. 76, 80-81, 46 A. 2d 275.

Nor does the filing of a petition for a rehearing suspend the operation of a decree or order unless a special order has been passed, before it becomes enrolled, suspending it. *Jacobs v. Bealmear, supra,* 41 Md. 486; *Bailey v. Bailey, supra.* Neither this court nor the lower court can order that a decree shall not be enrolled—unless it can bid the sun stand still and can halt the passage of time. Nor can either court extend the time for appeal. The lower court can, however, suspend the operation of a decree or order. In *Bennett v. Bennett,* 5 Gill 463, 466-467, passage of an order *nisi* for annulling a decree was held to suspend the decree. With considerable doubt and hesitation we have concluded that the order of June 12, 1951, which expressly purports to do two things that no court has power to do, also shows an intention to suspend the operation of the decree or order of May 17, 1951 and has the effect of doing so. As the decree or order of May 17, 1951 was thus suspended from June 12, 1951 to August 28, 1951, the appeal on August 29, 1951 was taken within thirty days.

This is a suit to enjoin interference "with the natural drainage of surface water" and specifically to require

removal of a wall, ninety feet long and eighteen inches high, erected by defendants six inches from the boundary line between plaintiffs' and defendants' properties in Chevy Chase. These adjoining residence properties, plaintiffs' to the east, defendants' to the west, front on the south side of Grafton Street, between Cedar Parkway to the east and Wisconsin Avenue to the west. At the rear, to the south, the Grafton Street lots abut on the rear of lots fronting on Oliver Street, parallel to Grafton Street. On Grafton Street there are eight houses between plaintiffs' house and Cedar Parkway. The natural flow of surface water is generally from the south and east to the north and west, from Oliver Street to Grafton and from Cedar Parkway to Wisconsin Avenue. The preponderance of water seems to be from the east to the west. When it rains, there is a stream fifteen to eighteen feet wide, in the center part seven inches deep, flowing across the back of plaintiffs' lot and his neighbors' on the east. This water is augmented by the flow from Oliver Street. Before defendants built their wall, their neighbor on the west, a Mr. Leonard, built a wall between his property and defendants'. Defendants' response to this move was to build his wall and urge plaintiffs to do likewise. Plaintiffs would not do so. If plaintiffs had been willing, a wall between their property and their neighbor's on the east would have done the same wrong and damage to their neighbor as defendants' wall does to plaintiffs. There are no such walls between plaintiffs' property and Cedar Parkway.

The obvious effect and intent of erecting defendants' wall was to change the natural flow of water from east to west across the back of the Grafton Street properties to flow from south to north to Grafton Street. Water is literally dammed up on plaintiffs' property, and it is said, sometimes overflows the wall. From the argument, and from Judge Prescott's opinion, there seems to be no serious question that the erection and maintenance of defendants' wall is an invasion of plaintiffs' legal rights. It is unnecessary to quote or state the controlling legal

principles as stated in our recent decisions. *Bishop v. Richard*, 193 Md. 6, 65 A. 2d 334; *Biberman v. Funkhouser*, 190 Md. 424, 58 A. 2d 668; *Whitman v. Forney*, 181 Md. 652, 31 A. 2d 630. Relief was denied because the court found that plaintiffs also were at two places diverting the natural flow of water from south to north on their property to flow from east to west across defendants' property. The points on which the plaintiffs were found at fault and were denied all relief are thus stated in Judge Prescott's opinion, "[1] In constructing plaintiffs' house, it was actually built into the ground deeper than desirable. This necessitated a grading up around the rear of the house sloping it down toward the rear of their lot, that is the south side. Where this slope meets the slope of opposite direction from the south creates in effect a ditch, which concentrated the surface waters and carried them, before the erection of the wall, directly on to defendants' land. [2] In addition, it is admitted and obvious to view that in the rear or south side of plaintiffs' lot they have constructed a ditch and placed the drain tile, broken in half, of about twelve inches in diameter, that guided the surface water from that part, before the wall, directly on to defendant's lot. This ditch changes the course of natural drainage from a north and westerly course to one almost due west and ejects upon defendants' lot at one point concentrated amounts of water that but for it would in large part be diffused upon plaintiffs' property. * * * As long as this condition exists, the court cannot grant plaintiffs relief, as the wall directly prevents the discharge of this additional and concentrated water on to defendants' land at the two spots above mentioned. As a matter of fact, if plaintiffs were willing to cooperate with a slight amount of grading, it seems the problem would present little difficulty. The court has waited considerable time in hopes these neighbors would work out their small problem, but plaintiffs have not eliminated and apparently do not desire to eliminate the above so, the court must dismiss their bill of complaint."

[Bracketed numbers inserted.] At this time we shall not review the testimony or pass upon questions of fact on these points. Besides seeing and hearing the witnesses, Judge Prescott visited the property on two different occasions. We should be slow indeed to differ with him on a finding of fact. At the argument defendants admitted that the second point presents no great difficulty. Plaintiffs say their "ditch" is a natural gulley which continues across defendants' land, and that they have only put tiles in the gully on their land. One of defendants testified that the tiles have the effect of throwing all the water in the "ditch" on defendants' land and preventing any of it from seeping into plaintiffs' land. This particular controversy seems somewhat trivial.

Conceding that the court cannot grant plaintiffs' relief which will enable them unlawfully to "discharge additional and concentrated water on defendants' land", and assuming for present purposes that plaintiffs are invading, or would invade, defendants' rights as Judge Prescott holds, we think the denial of all relief is out of proportion to plaintiffs' wrongdoing. A wall ninety feet long is not necessary to prevent the discharge of water "at two spots". Judge Prescott finds plaintiffs not disposed to agree with their adversary quickly. Plaintiffs say, with at least some color, that defendants are not receptive to appeasement. They say defendants will not agree to anything which involves removal of any part of their wall. "Such an agreement * * * must be made by the parties and not by the court." *Whitman v. Forney, supra,* 181 Md. 660, 31 A. 2d 633. If plaintiffs have done wrong, the court should decide what the wrong is and what is the remedy and should not deny plaintiffs all relief, but should condition appropriate relief to plaintiffs (including removal of the wall) upon appropriate rectification by plaintiffs of their own wrongdoing.

For this purpose the case will be remanded for further proceedings, with the right to either or both parties to take additional testimony, on the points left open.

The court, in its discretion, may permit or require defendants to show,by cross-bill or amended answer, the wrongs by plaintiffs of which defendants complain.

*Decree reversed and case remanded, the respective parties to pay their own costs.*