LANCASTER *v.* GARDINER et al., Substituted Trustees

[No. 304, September Term, 1960.]

*Decided May 4, 1961.*

*Motion for rehearing filed June 5, 1961, denied June 22, 1961; motion for stay of mandate filed May 31, 1961, granted June 22, 1961, as provided in Order of Court.*

The cause was argued on the motion to dismiss before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Edgar A. Wren* for the appellees on the motion to dismiss.

*Henry St. J. FitzGerald* for the appellant on the motion to dismiss.

BRUNE, C. J., delivered the opinion of the Court.

The appellees, Substituted Trustees under the will of S. Spearman Lancaster, have moved to dismiss the appeal herein on three grounds: first, that it is not timely as to an enrolled decree; second, that it is from a non-appealable discretionary order; and third, that it is defective as to one order because the appeal therefrom was filed before the order itself was filed. From the voluminous record transmitted to this Court it is evident that this case is merely one chapter in lengthy litigation involving the trust of the residuary estate under the above will. The appellant, Gertrude Lancaster, is one of the beneficiaries of that trust, and has been represented by a number of different counsel in various phases or stages of the proceedings, at least four of whom, Mr. Gilmore, Mr. Rysticken, Mr. Bowen and her present counsel, Mr. FitzGerald (of the Virginia bar) have represented her successively during the period since July 11, 1959, when the Trustees filed the petition which initiated the proceedings out of which this particular controversy has grown. The appellant filed her answer to the petition on August 17,

1959, through Mr. Gilmore and Mr. Carlyle J. Lancaster as her solicitors.

The will of the decedent provided (in the events which happened) that the trust should end twenty years after his death, which occurred on February 4, 1940. Included in the trust estate was the testator's property at Rock Point in Charles County, which consisted of about 195 acres, some of which was waterfront property. The trustees were directed to sell the trust estate at the termination of the trust, but had no power to sell it earlier. They were, however, empowered to lease it, and predecessor trustees entered into a number of leases with varying terms, some of them providing options to the tenants to buy at market prices at the end of the trust, and one giving a right of first refusal; and at least some of the tenants were given the right to remove improvements erected by them. The validity and the exact nature and extent of the rights of various tenants were uncertain and were subject to some dispute.

In anticipation of the sale to be made at the termination of the trust, the appellees filed their petition of July 11, 1959, seeking the instructions of the court with regard to the lands held by the tenants. Before any hearing was held on this petition, and apparently with the informal approval of the court, the trustees entered into negotiations for the settlement of all matters between themselves and the various tenants, subject to the approval of the court. These resulted in most instances in tentative agreements for the sale of the leased properties to the respective tenants thereof at prices based upon appraisals obtained by the Trustees from apparently competent appraisers. A two-day hearing was held in January, 1960, at which the appellant was represented by her then counsel, Mr. Gilmore. At the conclusion of the hearing Judge Gray delivered an oral opinion approving in principle the proposed settlements and conveyances to be made pursuant thereto and directing that appropriate surveys be obtained upon which to base a decree and deeds. Such individual surveys were obtained in February, 1960. Due to some accident

or mistake, a form of decree thereafter drafted to carry out Judge Gray's views never reached him and about three months later a duplicate was prepared and submitted to him. This was signed on May 14, 1960, and was filed on May 17th. It will be referred to as the decree of May 17th. This decree approved the sale by the trustees to the respective tenants claiming interests therein of twelve lots and the compromise of claims of others in respect of two lots (for which no acceptable offers of purchase were received) by the payment by the Trustees of $500 as to one lot and of $250 as to the other. With regard to the lots which the Trustees were authorized to sell, the court found that the prices offered represented the current market retail values, and that these values were substantially higher than could be obtained in the event of the sale of the entire property, if that were possible.

Meanwhile, there was controversy over the sale of the balance of the Rock Point property, which greatly exceeded in acreage the lots leased to tenants. The appellant had had a survey made of the entire tract, which she claimed was needed for the successful sale of the large tract and which she wanted the Trustees to pay for. She also wished to purchase or acquire as part of her share of the estate a particular lot. There was a hearing on these matters before Judge Digges on May 14, 1960, at which the appellant was represented by Mr. Rysticken as her counsel. The court expressed approval of the appellant's request that the Trustees purchase the survey, and also expressed approval in principle of the sale of some specific lots at their fair values, one of which was sought by the appellant. Subsequently, the Trustees reported the private sale of several lots, including the sale of one to the appellant; and these sales were finally ratified in August, 1960. No appeal was taken from the order of ratification. These proceedings were quite separate from the settlements with tenants covered by Judge Gray's decree of May 17th. They show, however, a willingness of the appellant to have the Rock Point property sold otherwise than as a single tract.

Upon petitions filed early in June, 1960, some amendments,

assented to by the Trustees, to the decree of May 17th were requested by tenants and approved by the court. These changes were, of course, within the thirty day period when the court had full revisory power over that decree under Maryland Rule 625.

On June 11, 1960—also within the thirty day period—the appellant, through her then counsel, Mr. Bowen, filed a so-called "Petition for Clarification of Charges." This sought a redetermination of the purchase price of lots covered by the decree of May 17th on the ground that the prices approved by that decree were not in accord with the appraisals obtained by the Trustees. The Trustees answered on June 24th. Because of the vagueness of the petition they also sought an amplification of it in the nature of a bill of particulars. Mr. Bowen furnished a copy of such a document to the Trustees, but he was discharged by the appellant as her counsel before it was signed and filed with the clerk. The appellant's new and present counsel, on instructions of his client, disavowed this particularization at the hearing on October 11th, which is more fully referred to below.

There had been no order to stay the operation of the decree of May 17th; and so far as we are advised or can discover from the record no request for a stay was made. The decree of May 17th accordingly became enrolled thirty days after its date. Maryland Rule 625; *Hancock v. Stull,* 199 Md. 434, 437, 86 A. 2d 734, and cases therein cited; *Riviere v. Quinlan,* 210 Md. 76, 122 A. 2d 332; *Monumental Engineering Co. v. Simon,* 221 Md. 548, 158 A. 2d 471. Assuming that the "Petition for Clarification of Charges" amounted to a motion for rehearing, it is clear under the Rule and cases just cited that the filing of the petition did not have the effect of rescinding the decree of May 17th or of suspending its operation. These cases also show that a motion for rehearing does not extend the time for appeal. Accordingly, if the appeal were (as it may well be) really from the decree of May 17th, it would have to be dismissed as not being timely under Mary-

land Rule 812 a, since not taken until after the expiration of thirty days from its date.

The "Petition for Clarification of Charges" which, despite some doubt, we shall treat as a motion for reargument, operated under Rule 625, to permit revision of the decree, if or to the extent, that the court might deem revision to be proper. The Trustees, after some negotiations with Mr. FitzGerald and evidently in an effort to bring matters to a conclusion, on September 19, 1960, filed a motion to strike the petition. This motion came up for hearing on October 11, 1960. At that time the appellant was represented by her present counsel and by Mr. Wigginton, of the Maryland bar, and other parties, of whom there were a number, were represented by their respective counsel. Early in these proceedings the Trustees withdrew their motion to strike, and the court then went into a hearing on the merits of the "Petition for Clarification of Charges," in which the appellant's counsel participated very extensively. After the hearing Judge Gray signed an order dated October 26, 1960, which modified the decree of May 17th as to one tract, increasing the sale price from $2,500 to $2,845 (a change already agreed to by the purchaser and the Trustees), and which dismissed the Petition and affirmed the decree of May 17th, except to the extent of the above modification.

The appellant now contends that the hearing on October 11th deprived her of a proper opportunity to present her case, since the hearing was expected to be only on the motion to strike and not on the merits, and that she was not then prepared to submit her full evidence on the merits. The transcript shows that there was a colloquy of some length between the appellant's counsel, the court and, to some extent, the Trustees and their counsel. The upshot of it was that, although both the appellant's and the Trustees' counsel expressed some doubts about going on with a hearing on the merits, they actually did go ahead and all parties agreed that they wanted to dispose of the matter. Late in the proceedings the appel-

lant did bring up the matter of a continuance to present some additional evidence partly through examining the appraisers who had been employed by the Trustees and who were not present in court, and partly through another appraiser.

The court suggested a proffer of such evidence. It then developed that the appellant had not interviewed either of the appraisers employed by the Trustees and that the discrepancies alleged in their appraisals were based upon the appraisals and upon surveys which were already before the court and were available for use in argument. It further developed that the appellant was unable even to name the prospective new witness, much less to say what his testimony would be, since no statement which could have been included in a proffer had been obtained from any appraiser. The court declined to grant a continuance. The Trustees, particularly Mr. Gardiner, were examined fully as to the appraisals which they had obtained and certain discrepancies as to lot lines involved in the appraisals and shown by subsequent surveys.

We have gone into the background of this case with unusual fullness for the consideration of a motion to dismiss because the order of October 26, 1960, dismissing the petition or motion for rehearing was a discretionary order; and the only basis upon which an appeal from such an order would lie would be an abuse of discretion. *Jacobs v. Bealmear,* 41 Md. 484; *Bailey v. Bailey,* 186 Md. 76, 46 A. 2d 275; *Hancock v. Stull, supra,* 199 Md. at 437; Miller, *Equity Procedure,* §§ 314, 315. Cf. *Waring v. Turton,* 44 Md. 535, 546; *Zimmer v. Miller,* 64 Md. 296, 299, 1 A. 858; holding such orders simply not appealable. Cf. also *Bortner v. Leib,* 146 Md. 530, 534, 126 A. 890, and *Holcomb v. Fender,* 203 Md. 480, 487, 101 A. 2d 814. In *Bortner* the court said that such orders were not appealable "when there is nothing on the record to indicate any injustice sustained by the petitioner or any abuse of its power by the court before which the cause was heard." The four cases cited in support of this statement do not seem in point. All of them were in the Court of Chan-

cery and in each the opinion was that of the Chancellor acting upon a motion for a rehearing, not of the Court of Appeals in acting upon an appeal from his order. The language about "injustice sustained by the petitioner" is taken from the Chancellor who was acting in the exercise of his original jurisdiction. (In one of those cases, *Dorsey v. Hammond,* 1 Bland 463, there is a notation at the end of the case that an appeal was dismissed by the Court of Appeals, but there is no opinion of the latter Court.) *Holcomb v. Fender, supra,* cites *Bortner* (as well as *Hancock* and *Bailey*) and condenses the language of *Bortner* with regard to appealability to the statement that "no appeal lies * * * unless there is a showing of injustice to the petitioner or an abuse of power by the lower court." (203 Md. at 487). We believe that the words "injustice to the petitioner" have crept into these cases inadvertently, though they may be regarded as merely expressing the idea that injustice to the appellant (not "petitioner") resulting from the abuse of discretion renders a discretionary order appealable, rather than as stating a new and broad ground for appeal from a discretionary order. We reaffirm the rule as stated in *Jacobs, Bailey* and *Hancock,* above cited.

Insofar as the appellant's contentions based upon going ahead with the hearing on the merits are concerned, we find nothing to show an abuse of discretion. The appellant at least acquiesced in going forward on the merits, her counsel stating (Transcript, page 11) : "I must say we are not quite prepared to go ahead on the merits, but I will do the very best I can."

Nor do we find any abuse of discretion in the court's refusing a continuance. Data supporting the appellant's attacks on the appraisals made for the Trustees were already before the court for whatever they were worth, and the hoped for testimony of some undetermined appraiser brought up in the midst of the hearing was at best a dubious basis for granting a postponement.

The appellant's further assertion that the Trustees' han-

dling of these sales and compromises involved such gross mismanagement that it was an abuse of discretion for the court not to prevent a sacrifice of the interests of the beneficiaries resulting therefrom, is, in essence, a complaint that the court did not agree with her contentions. It is evident that the court gave careful consideration to the problems involved, including the element of settlement or compromise (which the appellant elects to dismiss as wholly insubstantial), and did so both before signing the decree of May 17th and at the hearing of October 11th. At the latter hearing it also gave full consideration to the alleged discrepancies between the appraisals and surveys.

Our conclusion is that the appellant has shown no abuse of discretion on the part of Judge Gray in dismissing her petition or motion and in refusing to modify the decree of May 17th further than he did. We are not passing on the merits of that decree, which are not before us on this appeal, but we may note that there is no suggestion of any such situation as existed in *Saltzgaver v. Saltzgaver,* 182 Md. 624, 35 A. 2d 810. Suffice it to say that, unlike the situation in *Saltzgaver,* this case was heard *in extenso* on the merits, that no error is suggested as to the applicable law, and that there is no suggestion that the appellant was unable, physically or otherwise, to take a timely appeal from the decree of May 17th, had she chosen to do so. This Court has shown no disposition to extend *Saltzgaver* to reopening decrees in ordinary equity cases heard on the merits. Cf. *Vierling v. Holt,* 197 Md. 522, 527-528, 80 A. 2d 24.

Insofar as the order of October 26, 1960, is concerned, we accordingly find nothing to take this case out of the general rule that an order denying a petition for a rehearing is not appealable.

The appeal entered prematurely from the refusal of the trial court to strike out the order of October 26th, even if properly before us, is disposed of by what we have already said. It is based upon the denial of a motion to strike a dis-

cretionary order. The motion to strike was also addressed to the discretion of the court. It was carefully considered by the court and the learned trial judge filed an opinion setting forth his reasons for denying it. We need say no more as to their sufficiency than to observe that they make it quite clear that the denial of the motion involved no abuse of discretion. We need not pause to consider whether or not the appellant, who had herself contracted to buy a single lot out of the tract, was estopped to complain of the sales to others on the ground that the sales of some individual lots impaired the value of the tract as a whole, which complaint was the basis for her motion to strike.

Finding no basis upon which to support a claim of an abuse of discretion by the trial court in entering the discretionary orders appealed from, the appeal will be dismissed.

*Appeal dismissed; the appellant to pay the costs.*