CRAMER et al., TRUSTEES et al. *v.* WILDWOOD DEVELOPMENT COMPANY, LTD. et al.

[No. 76, September Term, 1961.]

*Decided December 5, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and SYBERT, JJ.

*Kelley Litteral,* with whom was *B. George Ballman* on the brief, for appellants.

*Hillel Abrams* for Wildwood Development Co., Ltd., one of appellees.

*Samuel Gordon* for Louis H. Cohen, Receiver, other appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree declaring a deed of trust to be null and void and ordering the clerk of the court to release it of record. Each of the appellees contend that the appeal should be dismissed because it was not taken in time. To understand the contention it is necessary to state the facts in some detail.

In June, 1957, all of the then existing creditors of Wildwood, a Maryland corporation, by written agreement between Wildwood and a committee representing such creditors, postponed their claims, and some of them released liens, in exchange for a note of Wildwood for $40,000.00, secured by a deed of trust, duly recorded, upon eighteen undeveloped lots owned by the corporation. The note was made payable to individual trustees for the benefit of all the creditors. In accordance with the terms of the agreement, the corporation, under a manager named by the creditors' committee, proceeded to construct and sell certain houses on other lots owned by the corporation. But the operation was not very successful, and there were various defaults in the corporate undertakings.

On December 11, 1958, some of the appellants filed a bill seeking an involuntary dissolution of the corporation, on the grounds of mismanagement and insolvency, and praying the appointment of a receiver. On April 6, 1959, the trustee appellants named in the deed of trust instituted a proceeding to foreclose, on the ground that it was in default. Wildwood sought to restrain the foreclosure and the appellees claim that the cases were consolidated by agreement, although no order for consolidation was filed until February 19, 1960, and then upon the court's own motion. After a hearing, the chancellor filed an opinion on September 11, 1959, in which he found that the corporation was insolvent as of December 11, 1958, and had been since the spring of 1957. He further found that the filing of the bill for dissolution and the appointment of a receiver amounted to an election of remedies by the plaintiffs, and that "they cannot proceed in the foreclosure case and in this case at the same time." He announced that he would permanently enjoin the foreclosure proceeding, dissolve the corporation, and appoint receivers to liquidate its assets. He signed such a decree on September 30, 1959, and an amended decree on October 30, 1959. No appeals were taken from those decrees.

On February 3, 1960, the receiver, who had duly qualified and taken steps to liquidate the assets, filed a petition to require the trustees to release their deed of trust. This was opposed by the trustees. However, the chancellor filed an opinion stating that the matter had been finally adjudicated when he decided on September 30, 1959, that the foreclosure be enjoined. On February 25, 1960, he signed a decree declaring the deed of trust to be null and void. On February 29, 1960, the trustees filed a petition for a rehearing, alleging that the opinion and order of February 25, 1960, had been filed without notice or an opportunity to be heard on the matter at issue. On March 30, 1960, they entered an appeal to this Court. On April 13, 1960, the chancellor signed an order granting a rehearing but providing that "such rehearing shall not prejudice the rights of any party who has acted on the faith of the decree of this Court dated February 25, 1960." On April 18, 1960, the trustees dismissed their appeal.

On September 22, 1960, the chancellor, after the rehearing, adhered to the views he had previously expressed, and signed a decree affirming his prior decree of February 25, 1960. The present appeal was noted on October 18, 1960. Meanwhile, on February 29, 1960, the receiver had filed a report of sale of the property secured by the deed of trust, which was duly ratified, authorizing a conveyance by the receiver to the purchaser free and clear of the trust.

The appeal of March 30, 1960, from the order of February 25, 1960, was not filed in time, and in any event it was dismissed before the hearing on the motion to reconsider the decree of February 25, 1960. Thus the court had jurisdiction to entertain the motion. *Tiller v. Elfenbein*, 205 Md. 14, 21. But the mere filing of such a motion could not operate to rescind the decree or to suspend its operation. See *Lancaster v. Gardiner*, 225 Md. 260, 266, and cases cited. Nor could it extend the time for appeal. The order of September 22, 1960, now appealed from, insofar as it declined to disturb the earlier decree, would appear to be a discretionary order, and the only basis upon which an appeal from such an order will lie is for an abuse of discretion. *Lancaster v. Gardiner, supra,* 268. On the other hand, it has been held that in an equity case the chancellor has power to suspend the operation of a decree, pending final disposition of a motion to vacate a decree, by special order passed before the decree has become enrolled. See *Monumental Eng. v. Simon*, 221 Md. 548, 550, and cases cited.

In *Hancock v. Stull*, 199 Md. 434, 437, we held that an order which in terms declared that the decree should not be enrolled had the effect of suspending its operation. In *Hanley v. Stulman*, 216 Md. 461, 467, we held that an order, passed within the thirty day period, likewise had the effect of suspending the decree. In both those cases, unlike the present case, the orders which we held to have the effect of suspending the prior decrees, were passed within thirty days from the date of the decrees. However, in *Briley v. Pinkston*, 215 Md. 417, where the granting of a rehearing occurred after the lapse of thirty days from the date of the decree, but it appeared that there had been no hearing prior to its passage,

we held that the appeal should not be dismissed under the circumstances. We said (p. 421) : "While in form the decree [appealed from] * * * merely confirmed the [earlier] decree * * *, we think the earlier decree was treated as mistakenly entered, and reopened and reconsidered, so that the only final decree was the one appealed from. In fact, Judge Fletcher in his opinion referred to it as a 'judgment nisi instead of absolute and requiring proof of issues'."

We think the situation in the instant case is not unlike that in the *Briley* case. The order of April 13, 1960, granting a rehearing, referred expressly to Rule 690, which provides in part: "A rehearing shall not be granted after the enrollment of a decree * * *; and if the decree or order has been executed, a party who has acted on the faith of such decree or order shall not be prejudiced by such decree or order being reversed or varied." Apparently the qualification added to the order of April 13, 1960, was intended to preserve the rights of persons dealing with the receiver, but the court was willing to reconsider the question of whether the deed of trust was a nullity as to parties who had not acted on the faith of the decree of February 25, 1960.

Despite the language of the rule prohibiting the granting of a rehearing after enrollment, which in the case of a final decree occurs after the expiration of thirty days from its date under Rule 671 a, Rule 625 recognizes the court's revisory power for a period of thirty days after entry, "or thereafter pursuant to motion filed within such period * * *." It would therefore appear that the timely filing of a motion has the effect of extending the time within which the court may exercise its revisory power. Moreover, although as a general rule an enrolled decree may not be reopened except upon bill for review, or by an original bill for fraud, the court has power to reopen where the case had not been heard on its merits and where there is a showing that the decree was entered by surprise or mistake, or where the circumstances are such as to satisfy the court that the decree should be set aside. *Pugh v. Waclawski,* 211 Md. 346, 350, and cases cited. Rule 625 also recognizes the revisory power of a court, after enrollment of a decree, in cases of "fraud, mistake or irregularity".

Evidently, the court in the instant case did not feel that a proper hearing had been accorded when the order of February 25, 1959, was passed, and hence that the decree had been mistakenly passed. We think that the court had the power to pass the order of April 13, 1960, and that the order had the effect of suspending the prior decree as between the parties. We think the decree passed on September 22, 1960, should therefore be treated as the final decree, although in terms it merely affirmed the earlier decree. The motion to dismiss the appeal is denied.

The appellants contend that the chancellor erred in holding that the deed of trust was a nullity. They point out that there were no charges of fraud in connection with the execution of the deed of trust by Wildwood, nor was there any contention that it created an unlawful preference in favor of the appellants. It would appear from the somewhat scanty record that all of the then existing creditors were represented by the creditors' committee, and upon acceptance of the note and deed of trust in June, 1957, Wildwood no longer had any debts that had matured in the usual course of business. It further appears that all parties concerned believed that its assets exceeded its liabilities, although not of a nature readily convertible into cash. Cf. *Leister v. Bank of Westminster*, 199 Md. 241. Thereafter, Wildwood breached its agreements, and the appellants sought, and obtained, the appointment of a receiver, some eighteen months after the date of the deed of trust.

The appellants contend that the chancellor erred in ruling that the decree dissolving the corporation and appointing a receiver, divested the lien of the deed of trust. A similar contention was advanced in *Goertz v. Backman*, 195 Md. 450, but this Court held otherwise. It was there said (p. 456): "* * * no existing liens of a corporation, other than those that would be void or fraudulent under the insolvency laws, are divested by dissolution of the corporation and the appointment of a receiver * * *." Again it was said: "In the absence of any statute to the contrary, secured creditors of an insolvent corporation are entitled to be satisfied from the secured property before it is liquidated or distributed as assets of the corpo-

ration * * *." In *Manufacturers' & Mer. Co. v. Pyles*, 125 Md. 317, it was held that a mortgagee had no standing to appeal from an order appointing a receiver, since the appointment did not divest the lien of the mortgage and the receiver, absent the consent of the mortgagee, could sell only the equity of redemption under what is now Code (1957), Art. 23, sec. 81 (c). See also *Pyles v. Manufacturers' & Mer. Co.*, 126 Md. 560, and *Forest Lake Cemetery v. Baker*, 113 Md. 529.

It is true that in the instant case the chancellor permanently enjoined the appellants from foreclosing their lien, and subsequently ratified a sale by the receiver of the property secured, free and clear of the lien. Whether he had the inherent authority to do so, without the written consent of the lienor, in spite of the limitation imposed by Code (1957), Art. 23, sec. 81 (c), may be open to question. There seems to be a split of authority on the point. See 45 Am. Jur. *Receivers* § 385, and the cases collected in the notes in 35 A.L.R. 255, 78 A.L.R. 458, and 120 A.L.R. 921. But no appeals were taken from those decrees, and they are not open to collateral attack, since the matter is procedural and not jurisdictional in the fundamental sense. *Friedman v. McLane*, 193 Md. 565, 576. We think, however, that the effect of those decrees was not to nullify the lien but merely to remit the lienor to the proceeds. See 75 C.J.S. *Receivers* §§ 138, 290; *Novor v. Fourth Street Bargain Store Co.*, 145 Atl. 119 (Del. Ch.); *Frye v. MacWilson*, 177 N. E. 232 (Ohio); *National Surety Corp. v. Sharpe*, 72 S. E. 2d 109, 123 (N. C.); *New York Trust Co. v. Watts-Ritter & Co.*, 57 F. 2d 1012 (C. C. A. 4th).

The decree of September 30, 1959, enjoining the foreclosure, cleared the way for a sale by the receiver, free and clear of the lien. In this the trustees acquiesced, because, as they maintained, they believed that the receiver could obtain a better price than if the mortgaged property were sold by them. Their failure to appeal was tantamount, we think, to a written consent. But we find nothing in that order to bar the lienor from asserting a preferred claim against the proceeds. The chancellor's statement that the trustees could not "proceed in the foreclosure case and in this [receivership] case at the same time," did not purport to deal with the question of prefer-

ence in the proceeds of sale. Nor do we find any necessary inconsistency in the fact that the trustees sought a receivership and later sought to foreclose. They were entitled to share as unsecured creditors in the proceeds of property not covered by the lien. They were also entitled to assert the validity of their lien. It was not until the decree of February 25, 1960, which was reconsidered and reinstated on September 22, 1960, that the chancellor ruled that the deed of trust was void. That ruling was predicated, not on any finding that the lien created by the deed of trust was fraudulent as to the then existing creditors, but solely on the ground that the matter had been finally adjudicated in the decree of September 30, 1959. We cannot find on the record that it was.

> *Decree reversed, with costs, and case remanded for further proceedings, not inconsistent with the views here expressed.*