S. & G. REALTY COMPANY, INC. *v.* WOODMOOR REALTY CORPORATION, ET AL.

[No. 318, September Term, 1968.]

*Decided December 3, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*John H. Garmer,* with whom was *A. Owen Hennegan* on the brief, for appellant.

*Solomon Kaplan,* with whom were *Berenholtz, Kaplan & Heyman* on the brief, for Woodmoor Realty Corporation, one of appellees.

*Marvin I. Singer,* with whom were *Sullivan, Wiesand & Singer* on the brief, for Tulip Realty Company of Maryland, other appellee.

HAMMOND, C. J., delivered the opinion of the Court.

This is another in a series of battles the owners of a store building on a lot adjacent to the parking area of the Woodmoor Shopping Center on Liberty Road in Baltimore County have fought to continue the use of that parking area by patrons of the store building. Each time the judicial holding has been that Woodmoor Realty Corporation (Woodmoor), owner of the shopping center, had validly covenanted that only the tenants and patrons of the center could use the parking area and. therefore, patrons of the adjoining lot could not. Now the present owner of the adjoining lot, its tenant who operates bingo games in the store building, and various religious and charitable corporations who profit from the bingo games, seek to reverse the judicial ban on the use of the shopping center parking lot by bingo players, fighting in court as fiercely it would seem as men once did for gold and glory.

In *Maryland Trust Co. v. Tulip Realty Co.,* 220 Md. 399, 412-414 (1959), we affirmed that part of a decree of Judge Gontrum in the Circuit Court for Baltimore County which directed Woodmoor, in order to keep unauthorized parkers off the shopping center as its covenant obliged it to do, to build a five-foot wire fence along

the boundary line dividing the store building lot and the shopping center with an eighteen-foot extension of the fence on the property of Sedgemoor Realty Company, the then owner of the store building lot.

Maryland Trust Company acquired the Sedgemoor lot and building at a foreclosure sale and then again challenged the building of a fence on its land. In *Maryland Trust Co. v. Tulip Realty Co.*, 222 Md. 516, 518 (1960), we said that the decree which ordered erection of most of the fence on the boundary line and the rest on Sedgemoor's land and enjoined Sedgemoor and Maryland Trust from interfering with the erection or maintenance of the fence, was not only proper but obligatory under the opinion in the first appeal, which had become the law of the case.

S. & G. Realty Company, Inc., the present appellant, acquired the store building in October 1962 with full knowledge, as it expressly concedes, of the prior litigation and the decrees requiring the erection of the fence, partly on the land it bought, and about a year later leased it to Toy-Barn-Liberty, Inc. Woodmoor then began to prepare for the building of the fence. Efforts to enjoin its building and counter efforts to enjoin use of doors in the north wall of the store building for other than ingress and egress of freight followed. In December 1963 Tulip, the store owner in the shopping center who had originally forced Woodmoor to enforce its covenant, sought to have S. & G. and Toy-Barn held in contempt for using the parking lot. Three years later in February 1967, Woodmoor sought contempt orders against S. & G., its president, and one Yerkes, the bingo operator tenant of the store building, on the same grounds.

Judge Raine, having consolidated all the proceedings, heard all parties and overruled motions raising preliminary objections filed by S. & G. and Yerkes, treated the contempt petitions as petitions to modify the amended decree of November 5, 1959 that was passed pursuant to the approving mandates of this Court in the 1959 and

1960 appeals, and by decree dated November 30, 1967 (the primary decree) repassed the decree of November 5, 1959, and extended its application to S. & G.. Yerkes and all others in privity with them.

Some two weeks later S. & G. and its president filed a petition to set aside the decree or, in the alternative, to modify it so that it would not bind S. & G.'s president individually. There was also a prayer that "in the event this court does not act to set aside its order or modify, that this petition be considered an appeal therefrom." Various parties, most of whom were religious or charitable entities that benefited from the bingo games, were permitted to intervene.

On May 27, 1968, Judge Raine heard testimony. On June 17 he filed a memorandum opinion, saying in part:

> "Woodmoor and its tenants have a right to the exclusive use of the shopping center parking area. * * * The owners of the adjacent property must resign themselves to this fact. Not once, but twice the highest court in this state has declared that Judge Gontrum's order was proper, that its purpose was to prevent pedestrian passage from the Woodmoor parking lot to the adjacent building."

To this we may add that in the second appeal to this Court—222 Md. 516—the record and the brief of Maryland Trust reveal that the only point at issue was the power and the right of the court to order any part of the fence to be built on property owned by Maryland Trust and never owned by Woodmoor,[1] and the opinion of this

---

1. Maryland Trust's brief, p. 2, says: "The Appellants contend that the Amended and Final Decree, insofar as it orders a part of the fence to be erected on property now owned by the Appellant, Maryland Trust Company, and previously owned by Sedgemoor Realty Corporation, is not consistent with the opinion of this Court. The Appellants object to that part of the fence beginning at a point one foot east of the northwestern corner of the building and thence running westerly to the common boundary with the Woodmoor Shopping Center. The Appellants do not, on this appeal, contend that any other portion of the Amended and

Court on that appeal, rightly or wrongly it now matters not, decided that the fence could and should be built on the land of Maryland Trust. Furthermore, S. & G. bought the land knowing of the burden its purchased land must bear.

On August 7, 1968, Judge Raine ordered and decreed that all pending petitions for modifications of the order of November 30, 1967, be dismissed and that said order should continue to remain in full force and effect. On September 5 next S. & G. entered an order for appeal to this Court from the "order of court dated August 7, 1968, in the above entitled matter."

Although appellant seeks to present for decision its argument that laches now bars the erection of the fence and its argument that a fence cannot be built and maintained by another on its land, the sole question presented in the present posture of the case is whether there was an abuse of discretion in refusing to disturb the primary decree. This is so because a motion for the setting aside of or modification of a decree is a motion addressed to the sound discretion of the trial judge. No appeal was taken from the primary decree of November 30, 1967, and Judge Raine ordered no stay of its operation and effect, either expressly or by necessary implication. Its merits are not before us for review.

In *Lancaster v. Gardiner*, 225 Md. 260, 266-267, *cert. den.* 368 U.S. 836, in which the motion for reconsideration was made in June within thirty days of the original decree and heard and decided in October, Chief Judge Brune for the Court well summarized the law:

"There had been no order to stay the operation of the decree of May 17th; and so far as

Final Decree is inconsistent with the opinion of this Court; nor do the Appellants object to the balance of the portion of the Amended and Final Decree directing the Woodmoor Realty Corporation to construct a fence. The Appellants, however, do contend that the trial court acted in error in ordering a part of the fence to be constructed on property now owned by the Maryland Trust Company—property that was at no time owned by the Woodmoor Realty Corporation."

we are advised or can discover from the record no request for a stay was made. The decree of May 17th accordingly became enrolled thirty days after its date. Maryland Rule 625; *Hancock v. Stull*, 199 Md. 434, 437, 86 A. 2d 734, and cases therein cited; *Riviere v. Quinlan*, 210 Md. 76, 122 A. 2d 332; *Monumental Engineering Co. v. Simon*, 221 Md. 548, 158 A. 2d 471. Assuming that the 'Petition for Clarification of Charges' amounted to a motion for rehearing, it is clear under the Rule and cases just cited that the filing of the petition did not have the effect of rescinding the decree of May 17th or of suspending its operation. These cases also show that a motion for rehearing does not extend the time for appeal. Accordingly, if the appeal were (as it may well be) really from the decree of May 17th, it would have to be dismissed as not being timely under Maryland Rule 812 a, since not taken until after the expiration of thirty days from its date.

"The 'Petition for Clarification of Charges' which, despite some doubt, we shall treat as a motion for reargument, operated under Rule 625, to permit revision of the decree, if or to the extent, that the court might deem revision to be proper."

Judge Brune said further (pp. 268-269 of 225 Md.) :

"We have gone into the background of this case with unusual fullness for the consideration of a motion to dismiss because the order of October 26, 1960, dismissing the petition or motion for rehearing was a discretionary order; and the only basis upon which an appeal from such an order would lie would be an abuse of discretion. *Jacobs v. Bealmear*, 41 Md. 484; *Bailey v. Bailey*, 186 Md. 76, 46 A. 2d 275; *Hancock v. Stull, supra,* 199 Md. at 437; Miller,

*Equity Procedure,* §§ 314, 315. Cf. *Waring v. Turton,* 44 Md. 535, 546; *Zimmer v. Miller,* 64 Md. 296, 299, 1 A. 858; holding such orders simply not appealable. Cf. also *Bortner v. Leib,* 146 Md. 530, 534, 126 A. 890, and *Holcomb v. Fender,* 203 Md. 480, 487, 101 A. 2d 814. In *Bortner* the court said that such orders were not appealable 'when there is nothing on the record to indicate any injustice sustained by the petitioner or any abuse of its power by the court before which the court was heard.' The four cases cited in support of this statement do not seem in point. All of them were in the Court of Chancery and in each the opinion was that of the Chancellor acting upon a motion for a re-hearing, not of the Court of Appeals in acting upon an appeal from his order. The language about 'injustice sustained by the petitioner' is taken from the Chancellor who was acting in the exercise of his original jurisdiction. (In one of those cases, *Dorsey v. Hammond,* 1 Bland 463, there is a notation at the end of the case that an appeal was dismissed by the Court of Appeals, but there is no opinion of the latter Court.) *Holcomb v. Fender, supra,* cites *Bortner* (as well as *Hancock* and *Bailey*) and condenses the language of *Bortner* with regard to appealability to the statement that 'no appeal lies * * * unless there is a showing of injustice to the petitioner or an abuse of power by the lower court.' (203 Md. at 487). We believe that the words 'injustice to the petitioner' have crept into these cases inadvertently, though they may be regarded as merely expressing the idea that injustice to the appellant (not 'petitioner') resulting from the abuse of discretion renders a discretionary order appealable, rather than as stating a new and broad ground for appeal from a discretionary order. We reaffirm the rule

as stated in *Jacobs, Bailey* and *Hancock,* above cited."

*See also Cramer v. Wildwood Co.,* 227 Md. 102, 106; *Austin v. Austin,* 234 Md. 393, 394; *Causey v. Gray,* 250 Md. 380, 392-393; *Baker v. County Comm'rs of Talbot County,* 255 Md. 490, 258 A. 2d 399 (1969).

Appellant has shown no abuse of discretion. Judge Raine merely followed the previous decisions of this Court in entering the primary decree, that is, he followed the law of the case in passing the decree. That law is that part of the fence could be built on the land S. & G. bought with full knowledge of that fact. Not only did S. & G. know this when it bought, it acknowledged it four years later in its lease to Yerkes and then failed to appeal the primary decree which expressly held that S. & G. must tolerate the fence on its land.

These facts and circumstances show that for at least one reason, lack of prejudice, if not for more than one, the doctrine of laches could not aid the appellant.

It is clear that S. & G.'s prayer that the court treat its petition as an appeal from the primary decree, if it denied the relief sought, was ineffective. The prayer for a conditional appeal would have had to have lost its conditional status within thirty days of November 30, 1967, and it did not. The cases make it clear that one in the position of S. & G. must fish or cut bait. If he does not obtain a stay of the primary decree, he can appeal within thirty days of its date and still seek revision of the primary decree by the trial judge, provided that at the time the court acts on a timely motion for revision the appeal has been dismissed. *Tiller v. Elfenbein,* 205 Md. 14; *Cramer v. Wildwood Co., supra.* Here the court acted on S. & G.'s petition for revision as S. & G. asked it to do and the court would have had no power to act had there been in effect when it did so an operative order of appeal.

S. & G. would have us, in effect, review the primary decree. It took no appeal from that decree which has be-

come enrolled and is bound by it; it cannot obtain a review of it under the guise of seeking a review of the exercise of judicial discretion in refusing to set it aside.

*Order affirmed, with costs.*