## McCANN, et al. v. McGINNIS

[No. 276, September Term, 1969.]

*Decided April 3, 1970.*

500

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Charles B. Keenan, Jr.*, with whom was *Edward C. Wilson, Jr.* on the brief, for Hazel McCann, et al., part of appellants; *Leonard J. Kerpelman* on the brief for Frank N. Caruso, other appellant.

*David S. Cordish*, with whom were *Cordish & Cordish, George W. White, Jr.* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This case involves the liability of the defaulting purchaser and the proper procedure to be followed when the purchaser at a foreclosure sale defaults. For procedural reasons we shall be obliged to dismiss the appeal. Pursuant to Maryland Rule 885, however, to avoid a further appeal to this Court, we shall indicate our views relative to liability and procedure.

A sale was held pursuant to the power of sale in the event of default contained in a mortgage. D. Franklin McGinnis, the appellee, was the reported purchaser. He is an attorney. Although there is a contention that he acted on behalf of the estate of one of the mortgagors of which estate he was the executor, McGinnis executed the affidavit required by Maryland Rule BR6 b. 3 indicating that he was the sole purchaser and was not acting as agent for anyone. The sale was duly ratified. Terms of sale required payment of the balance of the purchase money upon final ratification of the sale. Payment was not made. The attorney named in the mortgage filed a petition to require McGinnis "to comply with the terms

of the sale or show cause to the contrary * * * and upon failure to comply with such terms of sale, or show good cause to the contrary * * * to rescind the ratification of [the] sale and to order a resale of said real estate at the risk and cost of * * * the purchaser." An order to show cause was passed. The McGinnis answer claimed that he did not purchase individually but to protect the interests of an estate, that the Orphans' Court had refused to allow the purchase by the estate, and that through the Register of Wills "a letter was sent to the Attorney General's Office for an advisory opinion as to the power of the Executor to make such a purchase", to which no answer had been received. He further stated that a petition was being filed simultaneously in the Circuit Court asking it to take jurisdiction as to the power of the estate to purchase the property and to ratify the sale of property to the estate.

Apparently, a number of conferences were held and attempts made to move the property at private sale at the same or a greater figure. These efforts proved fruitless. Accordingly, on April 22, 1969, the chancellor passed an order in which he rescinded the order ratifying the sale, directed resale "at the risk and expense of the purchaser", and appointed to conduct the sale the attorney who made the original sale, he having been the attorney named in the mortgage.

On May 8, 1969, McGinnis filed what was entitled "Motion for Clarification of Decree", stating in pertinent part:

"1. That by Order * * * dated the 22nd day of April, 1969, the ratification of sale in the above matter of September 10, 1968, was rescinded and a public sale was ordered to be held * * * at the risk of your Movant.

"2. That this foreclosure proceeding was instituted against the subject property by the First National Bank and Trust Company * * * (hereinafter called 'National') as first mort-

gagee under subtitle 'W' of the Maryland Rules of Procedure * * *.

"3. That the debt owing to National on this mortgage was in the amount of $25,000.00 and upon the covenants contained in the mortgage, the attorney named in said mortgage would be the only person entitled to maintain an action at law for a deficiency as prescribed in Rule 'W-75.'

"4. That although the property was originally bid in for a price of $46,000.00 [1] the risk to National under the mortgage foreclosed cannot exceed the sum of its mortgage debt plus interest and expenses.

"Wherefore, your Movant respectfully requests this Honorable Court to clarify its Order for Resale and, more particularly, to specify in the said Order the amount of the debt owing to National and the risk to be incurred by your Movant as the defaulting purchaser."

No order was passed suspending the April 22 order. Sale was held on May 20, reported on May 21 and ratified on June 26. On June 16 the chancellor filed an opinion relative to the motion for clarification of decree, the concluding paragraphs of which are as follows:

"The Court in the present case is well aware of the facts and circumstances surrounding the foreclosure sale and the uncertainty as to the capacity in which the defaulting purchaser was acting at the sale. In view of these facts and in view of the fact that the Attorney named in the Mortgage has asked that the ratification of the sale to the defaulting purchaser be rescinded, the Court will rescind the ratification of September 10, 1968. The effect of this will be to set aside the first sale as if the Court had never rati-

---

1. This figure is in error. The actual bid was $45,000.00.

fied it following the Report of the Attorney named in the Mortgage, pursuant to Rule W 74 (f). Notwithstanding the fact that more than 30 days had elapsed from the date of ratification to the date on which the Attorney named in the Mortgage filed his petition praying for the rescission of the ratification, the Court has authority to vacate the sale. See *Sloan v. Safe Deposit and Trust Co.* [73 Md. 239 (1890)], at page 248.

"Because the first sale has been set aside and is now regarded as a nullity, the defaulting purchaser will incur no risk at the re-sale. However, he will incur the expense of all the costs attending the sale set aside. For authority see *Schaefer v. O'Brien,* 49 Md. 253 (1878). It should be noted that precisely the same result could have been reached if a judicial re-sale had been ordered pursuant to Rule BR 6 (c) since that Rule permits the Court to order a re-sale at the risk and expense of such purchaser, or take such other action as justice may require."

The docket entries for June 16 show merely "Opinion fd." On June 30 certain of the appellants filed a "petition for revocation and revision of order". On July 10 another appellant filed a similar petition. The docket entries of July 15 reflect:

"Matter taken up before the Court (Judge Dyer) on Petition of Frank N. Caruso for Revocation and Revision of Order dated June 16, 1969 and Petition of Edward C. Wilson, Jr., Agent for the First Mortgagee and Agent for the Court and Hazel McCann, Concetta DeRosa and The First National Bank of Harford County for Revocation and Revision of Order dated June 16, 1969 and arguments heard and concluded. Both Petitions Denied."

The appeals filed July 16 each refer to the "Order" of

June 16. It thus will be seen that all parties apparently treated the opinion as an order, although no order was in fact passed.

This Court has had occasion to comment several times recently relative to attempted appeals from opinions. See *Suitland Dev. v. Merchants Mort.*, 254 Md. 43, 53-56, 254 A. 2d 359 (1969); *Mattingly v. Houston*, 252 Md. 590, 593, 250 A. 2d 633 (1969); *Hayman, Adm'r v. Messick*, 252 Md. 384, 388, 249 A. 2d 695 (1969); *Ballan v. Ballan*, 251 Md. 737, 743, 248 A. 2d 871 (1969); *Bell v. Shifflett*, 249 Md. 104, 105-106, 238 A. 2d 533 (1968); *Kennedy v. Foley, Receiver*, 240 Md. 615, 214 A. 2d 815 (1965). The reasoning behind this is fully explained in *Miller, Equity Procedure*, § 260 (1897), where, under the heading "Distinction between opinion and decree", it is said:

> "The decree of a court of equity, and not its opinion, is the instrument through which it acts in granting relief. The opinion of the court does not constitute a part of the decree * * *. It is the expression of the reasons by which the judge reaches his conclusion. The decree on the other hand, is the fiat or sentence of the law, determining the matter of the controversy. *An opinion, however positive, is not in any sense a final act; it is not the subject of appeal, and may always be changed before final decree.* The reasons assigned for a decree are no part of the decree itself." (emphasis added)

Under Code (1968 Repl. Vol.), Art. 5, §§ 6 and 7, in this type of case we may consider only an appeal from a final order. This not being an appeal from a final order, the appeal must be dismissed. We now consider the merits of the case.

The court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any other chancery sale. *Warfield v. Dorsey*, 39 Md. 299, 307 (1874). Therefore, the question with which we are

faced when, as here, there is the failure on the part of a purchaser to comply with the terms of sale by settlement, is what remedy exists for breach of contract with the court.

Mortgage foreclosure proceedings are now covered by Subtitle W of the Maryland Rules. Rule W74 e provides that after a sale has been reported the procedure on each such report shall be "as if the sale were made by a trustee * * * pursuant to * * * Rule BR6 * * *." Rule BR6 c provides:

> "In case of default by the purchaser in a sale reported to the court, the court, on application, and after notice to the defaulting purchaser, may order a resale at the risk and expense of such purchaser, or may take such other action as justice may require."

This rule is a restatement of the preexisting statutory law found in Code (1957), Art. 16, § 163 prior to its repeal by Chapter 36, § 1 of the Laws of 1962. *Merryman v. Bremmer,* 250 Md. 1, 241 A. 2d 558 (1968). That section provided in pertinent part:

> "The court shall have full power and authority, on application by * * * petition of the trustee appointed by said court to sell real estate, to compel the purchaser thereof to comply with * * * the terms of such sale, by process of attachment or other execution suited to the case; or the said court * * * may direct the property purchased to be re-sold, at the risk of such purchaser, upon such terms as the court may direct; and in such case, if the proceeds of the resale, after payment of the expenses thereof and of all costs of proceeding, shall not be equal to the payment of the purchase money originally bid therefor, the court may order and direct the difference to be paid by the said purchaser, and enforce such order by execution."

Although the statute referred to sales by trustees appointed by the court, it has been held to apply to sales under the power contained in a mortgage. *Bilbrey v. Strahorn,* 153 Md. 491, 495, 138 A. 343 (1927); *Middendorf v. Refrigerating Co.,* 117 Md. 17, 24, 82 A. 1047 (1911); *Aukam v. Zantzinger,* 94 Md. 421, 427, 51 A. 93 (1902).

The statute remained unchanged from the time it was enacted as Code (1888), Art. 16, § 194, until its repeal. It was originally enacted as Chapter 216 of the Acts of 1841. The original enactment was altered when enacted as Code (1860), Art. 16, § 131 by the addition of the words "and enforce such order by execution". Otherwise, there was no change after the 1841 enactment until the 1962 repeal.

In *Farmers & Planters Bank v. Martin,* 7 Md. 342 (1855), Chief Judge Le Grand said for the Court speaking of a sale by a trustee:

> "When a party fails to comply with his contract of purchase, he may be coerced in three different modes: 1st, by attachment; 2nd, by suits at law on his notes or bonds; and 3rd, by a resale. *Richardson v. Jones, 3 G. & J. 163. Anderson v. Foulke, 2 H. & G. 346, Act of 1841, chapter 216." Id.* at 345.

Authority for the fact that power to proceed against a defaulting purchaser was recognized as existing prior to the passage of the Act of 1841 is found in *Mullikin v. Mullikin,* 1 Bland 538, where in 1828 the chancellor decreed that property be resold at the risk of the purchaser, saying at page 541 "that for the amount still due the equitable lien held by this Court yet subsists in full force and unimpaired." In *Andrews v. Scotton,* 2 Bland 629, in an opinion in 1826 the chancellor said:

> "From these authorities it appears to have been the settled law of the English Court of Chancery long before, and ever since our Revolution, that on a purchaser's failing to comply,

the Court would, on application, after the ratification of the sale,. compel him to complete his purchase by process of attachment for contempt.

"But it has happened in this State as in England, that the evidence of the existence of this power, so important and so necessary to the jurisdiction of the Court of Chancery, has been many times almost forgotten, and the propriety of the power itself has been as often doubted or opposed." *Id.* at 651.

The opinion of Chancellor Bland was affirmed by our predecessors in *Anderson v. Foulke,* 2 H. & G. 346 (1828).

There is contention here that because the order of ratification of the original sale was rescinded the court was without power to direct a resale at the expense of the purchaser and that requesting both called for inconsistent remedies. It is significant that in a case arising under the Act of 1841 within a reasonably short period after its passage the chancellor in *Dalrymple v. Taneyhill,* 4 Md. Ch. 171 (1853), said:

"The Act of 1841, ch. 216, under which the proceeding for a resale was had, gives no countenance to the idea that a non-complying purchaser is regarded as the owner of the estate sold by a trustee. It authorizes a resale of the property at his risk, but not as his property, on the contrary, *the order which the Court is authorized to pass by this Act, and the order which was in fact passed in this case is a revocation of the order confirming the sale* and destroys any inchoate title which the first purchaser may have acquired by the confirmation." *Id.* at 175. (emphasis added)

The trial judge in this case cited *Schaefer v. O'Brien,* 49 Md. 253 (1878), as authority for the procedure he outlined in his opinion. In that case there had been a

mortgage foreclosure sale. The original sale was made to
Rost. The same day the sale was reported the trustee
alleged the failure of the purchaser to comply with the
terms of sale. An order for resale at the risk of the pur-
chaser was passed, without giving the purchaser notice
or opportunity to be heard. The property was resold to
Hampson. The matter came before the court on the pe-
tition of Rost asking that the order for resale be re-
scinded and the first sale ratified, alleging that he was
willing and ready to comply with the terms of sale. He
and the mortgagor each filed exceptions to the sale to the
second purchaser. Judge (later Chief Judge) Alvey said
for our predecessors:

> "The first sale having been reported by the
> trustee, it is very clear that no order affecting
> the rights of the purchaser should have been
> passed without notice and an opportunity af-
> forded of showing cause against such order. But
> the order for the re-sale was clearly erroneous
> and without warrant in law, as it was not only
> passed *ex parte* and without notice, but the re-
> sale was ordered to be made at the risk of the
> purchaser. This could not be done until the first
> sale was ratified. The party must be accepted as
> the purchaser and the sale ratified, before he
> can be proceeded against for the enforcement
> of the contract of purchase. The summary pro-
> ceeding against a defaulting purchaser to ob-
> tain an order of re-sale at his risk, is grounded
> upon the equitable lien held and controlled by
> the court as vendor of the property, for the
> benefit of those interested in the proceeds of
> sale. Such lien is but the incident of the sale,
> and does not come into existence, to form the
> ground of proceeding, until the contract of pur-
> chase is consummated. *Anderson v. Foulke,* 2
> H. & G. 346, 363, 368, 372.
> "If, however, a sale be reported, as was done
> in this case, and the purchaser refuse to com-

ply with the terms of sale, upon representation by the trustee, or other party in interest, the court may order that cause be shown why the terms of sale are not complied with; and upon the failure of the party reported as the purchaser to show sufficient cause for his refusal or failure to comply, the court may then, considering all the circumstances of the case, if there be no other sufficient cause to the contrary, either ratify the sale or set it aside, as will best subserve the interest of the parties concerned. In such case, if the sale be. set aside, the court may properly, as terms of releasing the party from the purchase, and as the consequence of his own act, impose upon him all the costs and expenses attending the sale thus set aside because of his default. But if the sale be ratified, and the party still fail to comply, the court may then proceed, in a summary way, by order *nisi* and final order, to direct a re-sale of the property at the risk of the purchaser. And this course should have been pursued in this case.

"It follows that the sale made to Hampson must be set aside, and the order under which it was made must be treated as improvidently passed. And as the reported sale to Rost was neither set aside nor confirmed, the report of that sale is still before the court for final action. If Rost does not comply with the terms of sale, such proceedings may be taken as we have already indicated to be proper in such case." *Id.* at 255-57.

It will thus be seen that *Schaefer* is not authority for relieving the purchaser here of his responsibilities. In *Schaefer* the court differentiated between a sale which had been ratified and one which had not been ratified. For further summary of the procedure in the event of

default by a purchaser see *Miller, supra,* §§ 520 to 526, inclusive, with particular reference to § 525 where Miller cites *Schaefer, supra.* See also by way of further authority *Werner v. Clark,* 108 Md. 627, 71 A. 305 (1908), where, after quoting from *Dalrymple v. Taneyhill, supra,* to the effect that the Act of 1841 authorized resale of the property at the risk of the purchaser but not as his property, Judge Pearce said for the Court at page 633:

> "We cannot discover that this clear and emphatic language of the Chancellor has ever been questioned or criticised in any decision of this Court, nor do we think it can be said that the principle announced by him has been disapproved in any such decision."

Apparently the chancellor and the appellee are under the impression that a rescission of the order of ratification of the sale automatically relieves the purchaser of responsibility for any loss in the event of resale. At least since *Dalrymple v. Taneyhill, supra,* such has not been the case. That there may be situations in which it would not be just, wise or expedient to direct a resale at the risk of the original purchaser is recognized by the latter portion of Rule BR6 c which authorizes the court to "take such other action as justice may require". It is possible to think of situations where justice would not require a resale at the risk of the purchaser as, for instance, in the case of insolvency of the purchaser that existed in *Sloan v. Safe Dep. & Tr. Co.,* 73 Md. 239, 20 A. 922 (1890), to which the chancellor made reference, or where the purchaser was insane as in the sheriff's sale in *Cundall v. Haswell,* 23 R. I. 508, 51 A. 426 (1902).

Rule BR6 is a restatement or recodification of the pre-existing chancery practice in this state as was its statutory predecessor which came into being in 1841. Under the prior chancery practice, under the statute or under Rule BR6 it would be necessary for good cause to exist for relieving the original purchaser from further liability.

In this case the purchaser has been a member of the Bar of this Court for many years. He bid with full knowledge of the law with reference to judicial sales and his right, if any he had, to purchase on behalf of the estate of which he was executor, if that in fact was his intention. He executed an affidavit in which he swore he was buying for himself and not as agent for another. If he had entered into a contract to purchase real estate from an individual he would be bound to purchase or be liable for damages. His contract with the court should not have less sanctity. On these facts for the chancellor to relieve him of a part of the obligations of his contract constitutes an abuse of discretion.

In his "motion for clarification of decree" the purchaser indicates that he apparently is under the impression that the only liability of the purchaser upon default is to the holder of the first lien. This is not correct. Any money remaining after the satisfaction of the expenses of sale and the first lien would accrue to the underlying lien holders in order of priority and, if an excess still remained, to the owners of the land. See Maryland Rule W75.

It would be permissible under Maryland Rule 625 for the trial court "[f]or a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period" to revise the judgment. Under Maryland Rule 5 o the order of April 22 is embraced within the term "judgment". For full discussion relative to such revisory power see *S. & G. Realty Co. v. Woodmoor Realty*, 255 Md. 684, 259 A. 2d 281 (1969); *Cramer, Trustees v. Wildwood Co.*, 227 Md. 102, 106, 175 A. 2d 750 (1961); and *Lancaster v. Gardiner*, 225 Md. 260, 266-267, 170 A. 2d 181, *cert. den.* 368 U. S. 836 (1961). In this case, however, the motion was for clarification in a specific regard. The chancellor in his opinion indicated an intent not to clarify, but to modify materially the order, a point he himself conceded at the July 15 hearing. We hold that such modification was not permitted under Maryland Rule 625 under the circumstances here

and would be an abuse of discretion on the part of the chancellor. We further hold, therefore, that the order of April 22, 1969, remains in full force and effect without change. Upon remand, the parties will proceed upon that basis.

*Appeal dismissed and case remanded for proceedings consistent with this opinion, appellee to pay the costs.*